# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

NANCY TRAY; STEPHANA
FERRELL; ANNE WATTS
TRESSLER,

     *Plaintiffs*,

     v.

FLORIDA STATE BOARD OF
EDUCATION; BEN GIBSON, in his
official capacity as Chair, Florida
State Board of Education; RYAN
PETTY, in his official capacity as
Vice Chair, Florida State Board of
Education; MONESIA BROWN,
ESTHER BYRD, GRAZIE P.
CHRISTIE, KELLY GARCIA, and
MARYLYNN MAGAR, in their
official capacities as members of the
Florida State Board of Education;
MANNY DIAZ Jr., in his official
capacity as Commissioner of
Education of Florida,

     *Defendants*.

Case No. _____
JURY TRIAL DEMANDED

COMPLAINT

---

## INTRODUCTION

1.    Florida's leaders claim that the State "stand[s] up for the rights of

parents and the fundamental role they play in the education of their children," and

1

considers parents "to be the foremost authority involving their children."[1] And the State's Chancellor of K-12 education has declared that parents must be in the "drivers' seat" to ensure that concerns about their children's education are addressed.[2] Yet when those concerns relate to the availability of books and other material in public schools, Florida's leaders only welcome input from those parents advocating for removing books from schools.

2.     In 2023, purportedly as part of the effort to enhance parental rights, Florida's leaders adopted H.B. 1069, an expansion of the so-called Parental Rights in Education Act signed in 2022.

3.     H.B. 1069 and its implementing regulations provide parents[3] with a formal process, the State Review Process, to challenge before the Florida State Board of Education decisions by school boards to *retain* books and other materials, but not to challenge decisions by school boards to *remove* those materials.

---

[1] Press Release, Ron DeSantis, Governor Ron DeSantis Signs Historic Bill to Protect Parental Rights in Education (Mar. 28, 2022), https://www.flgov.com/2022/03/28/governor-ron-desantis-signs-historic-bill-to-protect-parental-rights-in-education/ (comments from Governor Ron DeSantis and then-Commissioner of Education Richard Corcoran, respectively).

[2] Comments of Dr. Paul Burns, Fla. State Bd. of Educ. Meeting, at 1:34:38-1:34:49 (Aug. 23, 2023), https://thefloridachannel.org/videos/8-23-23-state-board-of-education-meeting/.

[3] As used herein, "parent" includes legal guardians unless otherwise noted.

4.     Contrary to the bill sponsor's stated commitment that "[t]his legislation will protect the rights of parents to have a say in their children's education,"[4] this legislation only benefits those parents who hold the State's favored viewpoint: agreement with removing books and other material from schools, and disagreement with (and therefore seeking review of) decisions to retain books and other material.

5.     Parents who seek to retain materials, a viewpoint disfavored by the State, are excluded from the State Review Process.

6.     Plaintiffs are parents of students in Florida public schools who seek or have sought State administrative review of their school board's decisions to remove materials from local schools.

7.     Each of the plaintiff parents has been or reasonably expects to be discriminated against based on their disfavored viewpoint by being denied access to the State Review Process, therefore being denied the opportunity to seek State review of their school board's decisions on whether to remove materials from schools.

8.     "[B]arring only speech that endorses [certain] ideas . . . penalizes certain viewpoints–the greatest First Amendment sin." *Honeyfund.com, Inc. v. Governor*, 94 F.4th 1272, 1277 (11th Cir. 2024). Yet Florida has done just that.

---

[4] CBS Miami Team, *Florida Senate Votes to Expand Parental Rights in Education Law*, CBS News (May 3, 2023), https://www.cbsnews.com/miami/news/florida-senate-votes-to-expand-parental-rights-in-education-law/.

Because H.B. 1069 and its implementing regulations provide a benefit—access to the State Review Process and the corresponding opportunity to petition the State through an administrative system that can provide a remedy—differently depending on a parent's perspective, they violate the First Amendment's ban on viewpoint discrimination, and should be invalidated.

**PARTIES**

**I.    Plaintiffs**

9.      Plaintiffs are parents who disagree with local school board determinations on the use of specific materials in schools in the districts where their children attend public schools, and who have filed requests for State review of those determinations or would file such requests but for their reasonable expectation that any such request will be denied.

10.     Those requests have been or can reasonably be expected to be denied.

11.     **Plaintiff Nancy Tray** is a St. Johns County resident and parent of three students in St. Johns County School District. Parent Tray disagreed with the school board of St. Johns County's May 28, 2024, decision to restrict use of *Slaughterhouse Five* by Kurt Vonnegut; *Freedom Writers Diary* by Erin Grunwell and Freedom Writers; *l8r, g8r* by Lauren Myracle; and *A Stolen Life* by Jaycee Lee Dugard. Any request by Parent Tray to initiate the State Review Process by appointing a special

magistrate to conduct proceedings concerning the board's decision would be futile, as the Commissioner of Education of Florida will deny any such request.

12. **Plaintiff Stephana Ferrell** is an Orange County resident and parent of two students in Orange County Public Schools. Parent Ferrell disagreed with the school board's March 10, 2023, decision to discontinue use of *Shut Up!*, by Marilyn Robinson, in Orange County Public Schools, and, on September 5, 2023, and September 26, 2023, requested that the Commissioner of Education initiate the State Review Process by appointing a special magistrate to conduct proceedings concerning that decision. The Commissioner of Education denied her request on February 28, 2024.

13. **Plaintiff Anne Watts Tressler** is a St. Johns County resident and parent of two students in St. Johns County School District. Parent Tressler disagreed with the school board of St. Johns County's May 28, 2024, decision to restrict use of *Slaughterhouse Five* by Kurt Vonnegut; *Freedom Writers Diary* by Erin Grunwell and Freedom Writers; *l8r, g8r* by Lauren Myracle; and *A Stolen Life* by Jaycee Lee Dugard. Any request by Parent Tressler to initiate the State Review Process by appointing a special magistrate to conduct proceedings concerning the board's decision would be futile, as the Commissioner of Education will deny any such request.

## II. **Defendants**

14. **Defendant Florida State Board of Education** ("State Board of Education") is the chief governing body of non-university public education in Florida. It supervises Florida's public education system and the Commissioner of Education and leads Florida's Department of Education ("State Department of Education"). Fla. Const., art. IX, § 2; Fla. Stat. § 20.15(1). Pursuant to H.B. 1069, the State Board of Education is responsible for implementing the State Review Process, and has done so by adopting a rule, prescribing a template for local school districts[5] to provide to county residents to object to the use of specific material in district schools, and developing a form for parents of Florida public school students to seek State review of a local school board's determination on an objection to the use of material in schools.

15. **Defendant Ben Gibson** is the Chair of the State Board of Education. He is sued in his official capacity as Chair of the State Board of Education and in his official capacity as a member of the State Board of Education.

---

[5] School boards and school districts are not distinct legal entities, *see* Fla. Stat. § 1001.40, and the terms are used interchangeably in the statute and rule at issue in this case.

16.     **Defendant Ryan Petty** is the Vice Chair of the State Board of Education. He is sued in his official capacity as Vice Chair of the State Board of Education and in his official capacity as a member of the State Board of Education.

17.     **Defendants Monesia Brown, Esther Byrd, Grazie P. Christie, Kelly Garcia,** and **MaryLynn Magar** are members of the State Board of Education. They are sued in their official capacities as members of the State Board of Education.

18.     **Defendant Manny Diaz, Jr.** is the Commissioner of Education of Florida, appointed by the State Board of Education. Pursuant to H.B. 1069, the Commissioner of Education of Florida is responsible, upon request by parents, for initiating the State Review Process by appointing special magistrates to conduct proceedings concerning school boards' decisions to discontinue use of materials. He is sued in his official capacity as the Commissioner of Education of the State of Florida.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution, 28 U.S.C. § 2201, and 42 U.S.C. § 1983. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants are public officials of the state of Florida sued in their official capacities, and they maintain their principal headquarters in this District.

20.     Plaintiffs also seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## FACTUAL ALLEGATIONS

### I.  H.B. 1069's Statutory State Review Process

21.     Governor DeSantis signed H.B. 1069 into law on May 17, 2023.

22.     The statute went into effect on July 1, 2023.

23.     The legislation purported to provide parents with an opportunity to engage in their children's education by creating a process for them to request State review of local school board decisions on whether to discontinue the use of books or other material in public schools.

24.     H.B. 1069 requires local school boards to "adopt a policy regarding an objection by a parent [] to the use of a specific material." Fla. Stat. § 1006.28(2)(a)2.

25.     The statute requires local school districts to make available an objection form "as prescribed by State Board of Education rule" for lodging those objections. Fla. Stat. § 1006.28(2)(a)2.

26.     The statute only provides a mechanism for a parent to object to the affirmative use of material; it does not provide a mechanism for a parent to object to the lack of use or discontinued use of material. *See generally* Fla. Stat. § 1006.28(2)(a)2; *see also* Orders on Mot. to Dismiss at 9, *Parnell v. Sch. Bd. of Escambia Cnty.*, No. 23-cv-414 (N.D. Fla. Apr. 25, 2024), ECF No. 151 ("[The State

Review Process] deals with objections to the *use* of specific materials and says nothing of removals.") (emphasis in original).

27.     H.B. 1069 provides statutorily defined bases for parental objections to the use of material:

> b. Any material used in a classroom, made available in a school or classroom library, or included on a reading list contains content which:
> (I) Is pornographic or prohibited under s. 847.012;
> (II) Depicts or describes sexual conduct as defined in s. 847.001(19), unless such material is for a course required by s. 1003.46, s. 1003.42(2) (n)1.g., or s. 1003.42(2) (n)3., or identified by State Board of Education rule;
> (III) Is not suited to student needs and their ability to comprehend the material presented; or
> (IV) Is inappropriate for the grade level and age group for which the material is used.

Fla. Stat. § 1006.28(2)(a)2b(I)-(IV) ("Statutory Objections").[6]

28.     The statutorily prescribed bases for an objection to material all provide reasons that use of material should be discontinued; they do not include any bases by which a parent who supports continued use of material could object to its removal. *See, e.g.*, Fla. Stat. § 1006.28(2)(a)2b (flush left provision) ("If the district school board finds that any material . . . contains prohibited content under [the Statutory

---

[6] During the 2024 legislative session, the Florida legislature passed H.B. 1285, S.B. 7074, and S.B. 74, which amend parts of H.B. 1069. None of those bills amended the substance of the State Review Process. S.B. 74 did revise some of the cross citations to other statutory sections that are contained in the Statutory Objections. Those revisions are not relevant to Plaintiffs' claims here.

Objections], . . . the school district shall discontinue use of the material [whether entirely, or] for any grade level or age group for which such use is inappropriate or unsuitable.").

29.     Other than the Statutory Objections, the statute does not establish any other permissible bases for an objection to the use of material.

30.     The process for the State to review local school board decisions created by H.B. 1069 ("State Review Process"), codified at Fla. Stat. § 1006.28(2)(a)6, provides that:

> If a parent disagrees with the determination made by the district school board on the objection to the use of a specific material, a parent may request the Commissioner of Education to appoint a special magistrate who is a member of The Florida Bar in good standing and who has at least 5 years' experience in administrative law. The special magistrate shall determine facts relating to the school district's determination, consider information provided by the parent and the school district, and render a recommended decision for resolution to the State Board of Education within 30 days after receipt of the request by the parent. The State Board of Education must approve or reject the recommended decision at its next regularly scheduled meeting that is more than 7 calendar days and no more than 30 days after the date the recommended decision is transmitted. The costs of the special magistrate shall be borne by the school district. The State Board of Education shall adopt rules, including forms, necessary to implement this subparagraph.

Fla. Stat. § 1006.28(2)(a)6.

31.     In order to access the State Review Process, a parent who "disagrees with the determination made by the local school board on the objection to the use of

a specific material" must file a request with the Commissioner of Education. *See* Fla. Stat. § 1006.28(2)(a)6.

32.     By statute, the State Review Process begins with, at a parent's request, the Commissioner of Education appointing a "special magistrate" with the requisite experience to review "facts relating to" a local school board's determination on whether to discontinue use of materials in public schools. Fla. Stat. § 1006.28(2)(a)6.

33.     Following their review, a special magistrate issues a recommendation to the State Board of Education on how best to resolve the matter. *See* Fla. Stat. § 1006.28(2)(a)6.

34.     The State Board of Education is the ultimate decisionmaker on the matter and either approves or rejects a special magistrate's recommendation. *See* Fla. Stat. § 1006.28(2)(a)6.

35.     Local school boards whose decisions are the subject of special magistrate reviews are responsible for covering the costs of a special magistrate, regardless of the outcome of the State Review Process. *See* Fla. Stat. § 1006.28(2)(a)6.

36.     When H.B. 1069 was considered on the floor of the House of Representatives, its sponsor, Representative McClain, conceded that the bill would treat parents differently depending on whether they are objecting to or supporting the availability of material in schools:

Rep. Hinson: There's a method on several pages in your bill for a parent to complain about a book. But is there a method for the other 99% of the parents to request the book?
Rep. McClain: No there is not.
Rep. Hinson: Thank you, Mr. Speaker. Would you consider including one?
Rep. McClain: At this time, no.[7]

## II. The State Board of Education's Template Objection Form

37.    As required by H.B. 1069, *see supra* ¶ 25, in October 2023, the State Board of Education created a template objection form ("Specific Material Objection Template") for parents to use when lodging objections to materials with their local school boards.

38.    The Specific Material Objection Template was adopted by the State Board of Education as part of Rule 6A-7.0714. Fla. Admin. Code R. 6A-7.0714(3)(e).

39.    The State Board of Education has not released any other form to comply with the requirements of H.B. 1069.

40.    The State Board of Education requires local school districts to use the Specific Material Objection Template to collect and process parental objections. Fla. Admin. Code R. 6A-7.0714(3)(a).

---

[7] Exchange between Representative Henson and Representative McClaim, 2023 H. Sess., at 52:24-53:04 (Mar. 30, 2023), https://thefloridachannel.org/videos/3-30-23-house-session/.

41. Neither the Specific Material Objection Template nor any other form provide that a parent may use it to object to the discontinuation of use of particular material.

42. While local school districts *must* modify Part I of the Specific Material Objection Template to provide information that is specific to the local school district, and *may* "modify the appearance" of the template, local school districts *may not* otherwise modify the substance of the template. *See generally* Fla. Admin. Code R. 6A-7.0714.

43. Part II of the Specific Material Objection Template may not be modified, other than for appearance, by local school districts.

44. The introduction of Part II provides that parents must use the form to lodge an objection to "[m]aterials used in a classroom" other than instructional materials, "[m]aterials made available to students in a school or classroom library," "[m]aterials included on a school or classroom reading list," or certain instructional materials. Fla. Admin. Code R. 6A-7.0714(3)(a).

45. Part II, Section 3, of the Specific Material Objection Template provides the allowable bases for objections to material, accompanied by checkboxes, which mirror the substance of the Statutory Objections.

46. The Specific Material Objection Template does not provide any other permissible bases for an objection to the use of material.

47.     Part II, Section 3, of the Specific Material Objection Template also asks parents to select their desired outcome of the objection from the following options: "Remove or discontinue use of material"; "Limit access to certain grade levels"; "Limit my child's access"; or "Other."

48.     The Specific Material Objection Template does not provide parents with an option to select a desired outcome of retaining, keeping, or otherwise continuing to use material.

## III.     The State Board of Education Rule on the State Review Process

49.     H.B. 1069 requires the State Board of Education to promulgate rules and forms necessary to implement the State Review Process. *See supra* ¶¶ 25, 30.

50.     On May 26, 2023, the State Department of Education announced that it was developing a rule to implement the State Review Process, namely to "establish a process for parents to request the appointment of a special magistrate if they disagree with the local decision about an objection to materials used in school or classroom libraries." *See, e.g.*, Dep't of Educ., Notice of Development of Rulemaking, Rule 6A-1.094126, Vol. 49/103, Fla. Admin. Code (May 26, 2023).

51.     The State Department of Education reiterated that identical purpose when it proposed rule language to implement H.B. 1069 on August 1, 2023. Dep't of Educ., Notice of Proposed Rule 6A-1.094126, Vol. 49/148, Fla. Admin Code (Aug. 1, 2023) ("Proposed Rule").

52.     Following the rulemaking process, the Board of Education adopted a final rule ("State Review Process Rule") that is substantively identical to the Proposed Rule. *Compare* Fla. Admin. Code R. 6A-1.094126 *with* Proposed Rule 6A-1.094126, Fla. Admin Code (Aug. 1, 2023).

53.     The State Review Process Rule provides that "the appointment of a Special Magistrate will be considered for parental objections to any type of [non instructional] material made available to a student in a school library, included on a school, grade, or classroom reading list, or used in a classroom." Fla. Admin. Code R. 6A-1.094126(3)(a).

54.     The State Review Process Rule provides limited instances where the State Department of Education may dismiss a parent's request to access the State Review Process, namely where:

    1. The parent notifies the Department that the objection has been resolved or withdrawn;
    2. The Parental Request form has not been substantially completed, after the opportunity to provide missing or supplemental information has been provided;
    3. The parent has not demonstrated full and complete use of school and school district procedures adopted by the district under s. 1006.28(2)(a), F.S., for resolving the objection;
    4. The parent fails to allege that the district either failed to create a policy as required by s. 1006.28(2)(a)2., F.S., or did not follow the policy when ruling on the objection; or
    5. The parent failed to maintain accurate contact information with the Department or the Special Magistrate.

Fla. Admin. Code R. 6A-1.094126(7)(b).

55.     Under the State Review Process Rule, in order to request the appointment of a special magistrate, and access the State Review Process, a parent must meet certain prerequisites:

(a) Complete the Parental Request form referenced in subsection (10) of this rule;

(b) Demonstrate that before filing the Parental Request, the parent filed an objection with the school board and the school board has either ruled on the objection or has failed to timely process the objection under s. 1006.28(2)(a)2., F.S., and the procedures adopted by the school board;

(c) Describe the nature of the original objection submitted to the district, including the title and ISBN of the specific material objected to and the reason for the objection;

(d) Describe how the district failed to establish an adequate policy to address objections to materials as required by s. 1006.28(2)(a)2., F.S., or failed to follow that policy when resolving the objection; and

(e) Describe the resolution sought from the Special Magistrate and the State Board of Education.

Fla. Admin. Code R. 6A-1.094126(5).

56.     The State Review Process Rule does not provide any bases for a parental objection other than the Statutory Objections provided in H.B. 1069. Proposed Rule 6A-1.094126(5), Fla. Admin. Code (Aug. 1, 2023).

57.     The State Review Process Rule incorporates by reference the form promulgated by the State Department of Education for parents to use to request the appointment of a special magistrate. Proposed Rule 6A-1.094126(10), Fla. Admin. Code (Aug. 1, 2023).

58.     The parental request form allows parents to access the State Review Process and sets forth eligibility criteria for submitting a request. Fla. Dep't of Educ., *Parental Request for Appointment of a Special Magistrate for Materials Used in Classroom or School Libraries* (Sept. 2023) ("Parental Request Form").[8]

59.     Pursuant to the Parental Request Form, a parent can only file a request to access the State Review Process "after [they] ha[ve] sought to resolve the dispute with the school and school district using all the procedures adopted by the school district for the dispute." *Id.*

60.     Among other requirements, the Parental Request Form requires the requesting parent to "describe the nature of [and reason for] the objection submitted to the school district." *See id.*

61.     The Parental Request Form does not provide any additional bases for objections beyond the Statutory Objections.

62.     During an August 23, 2023, hearing on the Proposed Rule, various community members explained that, by its terms, the rule would exclude parents who sought to retain books from accessing the State Review Process.

63.     For instance, one commenter voiced opposition to the Proposed Rule "because it only applies to the parents who agree with the ban. It does not give an option for a person or a parent who does not agree with the ban and wants to have

---

[8] https://www.fldoe.org/core/fileparse.php/20670/urlt/11-3.pdf.

[the book]. You are making it easier to have the books pulled by the school system rather than pay for the magistrate."[9]

64.     One Collier County parent noted that the State Board of Education's rule had the effect of "shutting parents out of the appeal process" because "the Department of Education has written a rule that only allows the book objector to file an appeal," and emphasized that when the state says it "protect[s] parental rights, this should include all parents, not just a select few."[10]

65.     Another commenter noted that "parents who are concerned about books being removed from the classroom do not have an appeal process" under the rule, and that the rule effectively "shuts down oppositional voices."[11]

66.     A representative from a state antidiscrimination organization urged the State Board of Education to "respect the rights of all parents," pointing out that the process set forth in the Proposed Rule "is skewing the process and limiting it only

---

[9] Comments of Chris Schmeckpeper-Kobzina, Fla. State Bd. of Educ. Meeting, at 1:58:42-1:59:05 (Aug. 23, 2023), https://thefloridachannel.org/videos/8-23-23-state-board-of-education-meeting/.
[10] Comments of Dr. Amy Perwien, Fla. State Bd. of Educ. Meeting, at 1:51:57-1:52:48 (Aug. 23, 2023), https://thefloridachannel.org/videos/8-23-23-state-board-of-education-meeting/.
[11] Comments of Damaris Allen, Fla. State Bd. of Educ. Meeting, at 2:01:26-2:01:46 (Aug. 23, 2023), https://thefloridachannel.org/videos/8-23-23-state-board-of-education-meeting/.

to the book banners" and "incentivizing banned books by putting the financial burden on the school districts if they decide to not ban a book."[12]

67.     During the public hearing, State Department of Education Chancellor of Public Schools Dr. Paul Burns asserted that the rule would "protect" and "further" parental rights by "providing parents with a route for them to resolve [] disputes [related to removal of books] that is more expedient and accessible than a civil suit" and "place really parents in the driver's seat to ensure that their concerns are being addressed."[13]

68.     Despite being asked directly whether the State Review Process Rule is "one-sided," Dr. Burns did not provide a direct answer but did concede that only a parent who filed a Statutory Objection to the use of material would be able to access the State Review Process:

> It's a good question, member, and I may ask the general counsel to come up and help me with this one, but the way the rule language is laid out is that when you look at what the law said, so 1006.28, which was amended, and so we looked at that entire subsection, it's about a parent that disagrees with an objection at the local level. If that parent that disagrees with that objection at the local level, then that's when they can request the appointment of a special magistrate, certainly kinda outlining the steps I talked about previously, about they have to meet with the district and try to resolve that. But that's really what it's about.

---

[12] Comments of Carlos Guillermo Smith, Senior Policy Advisor, Equality Florida, Fla. State Bd. of Educ. Meeting, at 1:57:05-1:58:23 (Aug. 23, 2023), https://thefloridachannel.org/videos/8-23-23-state-board-of-education-meeting/.
[13] Comments of Dr. Paul Burns, Fla. State Bd. of Educ. Meeting, at 1:32:18-1:34:49 (Aug. 23, 2023), https://thefloridachannel.org/videos/8-23-23-state-board-of-education-meeting/.

So if that parent files an objection, and they disagree with that objection at the local level, that's when that parent can request the appointment of a special magistrate. But let me make sure that general counsel agrees. Right?

69.     As Dr. Burns concluded the comment, he turned to State Department of Education General Counsel Andrew King to confirm his agreement, and Mr. King nodded his head affirmatively, indicating his agreement.[14]

70.     The State Board of Education voted to adopt the final rule without any revisions. Fla. Admin. Code R. 6A-1.094126.

## IV.     Plaintiff Parents' Request to Access the State Review Process

Plaintiff Parent Stephana Ferrell

71.     Stephana Ferrell is the mother of two children in Orange County Public Schools ("OCPS"), one in middle school and one in elementary school.

72.     In the spring of 2023, Parent Ferrell learned that another parent had requested that OCPS remove the book *Shut Up!* by Marilyn Reynolds from the curriculum at OCPS's Timber Creek High School, alleging that it was "sexual [*sic*] explicit and pornographic in nature."

73.     In response to that parent's request, Timber Creek High School removed *Shut Up!* from that school's library in the spring of 2023.

---

[14] *See generally* Question of Board of Education Member Esther Byrd and Response of Dr. Paul Burns, Fla. State Bd. of Educ. Meeting, at 2:10:57-2:12:34 (Aug. 23, 2023), https://thefloridachannel.org/videos/8-23-23-state-board-of-education-meeting/.

74. In OCPS's record of "Requests for Reconsideration" spreadsheet, publicly available on the OCPS website, it linked to that parent's request to remove *Shut Up!* from the curriculum at Timber Creek High School but no other requests regarding the book. *See* Orange Cnty. Pub. Schs., *OCPS Requests for Reconsideration* (last updated Sept. 22, 2023).[15]

75. Without any additional objections filed by a parent, OCPS removed *Shut Up!* district wide over the summer of 2023.

76. OCPS pointed to the original parent's request as the parental request underlying the removal of *Shut Up!* across the entire district. *Supra* ¶ 74, OCPS Requests for Reconsideration.

77. On August 27, 2023, Parent Ferrell formally appealed the local school board's decision to remove the book district wide, noting in her appeal that the OCPS "did not need to remove this book under the law," and contending that OCPS had not adhered to its own process for reviewing the objection and removing the book.

78. OCPS rejected Parent Ferrell's appeal on August 30, 2023, citing the State Review Process to support its statement that "[o]nly the original challenger can appeal the determination of the School or District to not remove the book to the board. You do not have the standing to file the appeal with this board . . . the statute

---

[15]

https://docs.google.com/spreadsheets/d/1RoCVJ0apLlRfbcFTgfzEPbfvpDSiGCK1Q8EosNiCxTU/edit#gid=542222732.

does not expressly give the authority to parents to challenge a removal of a book …" E-mail from John C. Palmerini, Deputy Gen. Couns. for Orange Cnty. Pub. Schs., to Stephana Ferrell (Aug. 30, 2023, 11:14 EDT).

79.     On August 30, 2023, Parent Ferrell sought access to the State Review Process, pursuant to the State Review Process Rule, by emailing SpecialMagistrate@fldoe.org ("State Review Liaison"). In her email, she requested access to the State Review Process and the appointment of a special magistrate to review OCPS's actions.

80.     In response, the State Review Liaison informed Parent Ferrell that the anticipated effective date of the State Review Process Rule was September 26, 2023, and that the Department would begin reviewing Parental Requests Forms after that date.

81.     Parent Ferrell submitted her Parental Request Form to the State Review Liaison on September 26, 2023.

82.     On the Parental Request Form, Parent Ferrell noted that she "objected to the district wide removal of the book by the district," that she had "exhausted all options at the district level," and now sought state guidance on "whether or not the district's removal violated their policy."

83.     OCPS submitted its response to Parent Ferrell's request on October 19, 2023.

84.     OCPS's response contended that pursuant to H.B. 1069, the State Review Process "can only be utilized by persons objecting to material containing material that is illegal to have in a school media center or material which may not be in a school media center under School Board policy." (citing Fla. Stat. § 1006.28(2)(a)(b)).

85.     OCPS also noted that under the policies it was required to adopt pursuant to H.B. 1069, Parent Ferrell "can only challenge the 'use' of a book, not a separate decision of the District itself to remove a book."

86.     OCPS argued that Parent Ferrell "does not have the right to use [OCPS's procedures adopted] as required by § 1006.28(2)(a), Fla. Stat. because she is challenging the District's removal of the book *Shut Up!*, not its continued use by the District."

87.     OCPS acknowledged that there were no local school district remedies available to Parent Ferrell to resolve her objection.

88.     Finally, OCPS noted that "[n]either § 1006.28 nor [OCPS policy] allows a challenge to the removal of a book."

89.     The State Department of Education did not provide Parent Ferrell with a decision on her request to access the State Review Process for more than five months from the date of her submission, including more than four months following OCPS's submission.

90.     During the time that Parent Ferrell's request was pending, she repeatedly contacted the State Review Liaison to check on the status of her request.

91.     Despite not having provided Parent Ferrell with a decision on her request to access the State Review Process, not having indicated that she had not complied with the requirements of the State Review Process Rule, and not having suggested that her request would be dismissed pursuant to the State Review Process Rule, Defendant Diaz nevertheless referred to Parent Ferrell as "an activist" and accused her of "want[ing] to make" "a sexually graphic book" "available to kids" during a February 15, 2024, press conference in Orange County.[16]

92.     Prior to February 27, 2024, at no point did the State Review Liaison or anyone else responding on behalf of the State Department of Education provide any timeframe or information about the status of Parent Ferrell's request, other than noting, essentially, that her request was still under review and no other information was available.

93.     On February 27, 2024, the State Review Liaison informed Parent Ferrell that "the Department has received multiple requests for the Appointment of a Special Magistrate. You will receive a response in writing in the near future."

---

[16] Garrett Phillips, *Gov. DeSantis talks about 'book ban hoax' in Orlando*, WFLA News Channel 8 (Feb. 15, 2024), https://www.wfla.com/news/florida/live-gov-desantis-speaks-at-ucf-cancer-center/ (comments at 16:48-17:12 of video of press conference embedded in article). At the same press conference, Defendant Diaz admitted that he had seen and read only "parts of this book."

94.    The next day, February 28, 2024, the State Department of Education formally dismissed Parent Ferrell's request to access the State Review Process, explaining by email:

> The Department is in receipt of your Parental Request for Appointment of a Special Magistrate, as well as the district's response. A special magistrate is not available to contest a district's decision to remove material or for the purpose of providing clarification on the law. As such, your request has been dismissed.

95.    The State Department of Education did not dismiss Parent Ferrell's request for access to the State Review Process for any of the permissible reasons set forth in the State Review Process Rule. *See*, *supra* ¶ 54.

96.    Parent Ferrell's request was dismissed because she holds the State's disfavored view. She would otherwise file future requests for access to the State Review Process in the event that she "disagrees with the determination made by the [OCPS's] school board on [an] objection to the use of a specific material," but the State Department of Education has made clear that doing so would be futile.

Plaintiff Parent Nancy Tray

97.    Nancy Tray is the mother of three children in St. Johns County School District ("SJCSD"). During the 2024-2025 academic year, two of her children will be in high school and one will be in middle school.

98.    Parent Tray learned that at its May 28, 2024, meeting, the SJCSD school board would be considering objections to *Slaughterhouse Five* by Kurt

Vonnegut; *Freedom Writers Diary* by Erin Gruwell and Freedom Writers; *l8r, g8r* by Lauren Myracle; and *A Stolen Life* by Jaycee Lee Dugard.

99. The objector did not have children in the SJCSD schools at the time of the May 28, 2024, hearing.

100. The objector argued that all four books violated the Statutory Objection that concerns material that allegedly "[d]epicts or describes sexual conduct," and that they contain "explicit, graphic, violent disturbing scenarios."

101. At the hearing, Parent Tray objected to the board reducing access to or removing the books, saying that she wants her children, who are "trying to understand the world, to understand things they're experiencing, and their friends are going through, and the experiences of people and communities outside of their own," to "have access to relevant books and cautionary tales selected by the experts in our schools who are concerned about all of our kids."[17]

102. Parent Tray also noted that "[i]f there is a parent who doesn't want their child to read [any of the four books], there are effective ways for them to restrict their child's access without eliminating availability for every single high school student in St. John's County."[18]

---

[17] Comments of Nancy Tray, St. Johns Cnty. Special Sch. Bd. Meeting and Pub. Hearing, at 1:08:20-1:08:40 (May 28, 2024), https://www.stjohns.k12.fl.us/video/sb-meetings/.
[18] *Id.* at 1:08:01-1:08:11.

103.    In response to the objection, and over the disagreement of Parent Tray and other parents of SJCSD students, the board voted to restrict the use of *Slaughterhouse Five* and *A Stolen Life* to 11th and 12th grade students, and restrict the use of *Freedom Writers Diary* and *l8r, g8r* to students in 12th grade who have obtained parental consent.[19]

104.    Parent Tray disagreed with the SJCSD school board's decision on all four books.

105.    Parent Tray knows that any request for access to the State Review Process will be futile as it will be dismissed because she holds the State's disfavored view. She would otherwise file multiple requests for access to the State Review Process because she "disagrees with the determination made by the [SJCSD] school board on [an] objection to the use of a specific material," and would file additional such requests in the event that she disagrees with future determinations, but the State Department of Education has made clear that doing so would be futile.

Plaintiff Parent Anne Watts Tressler

106.    Anne Watts Tressler is the mother of two children in SJCSD, both in elementary school.

---

[19] *See also* St. Johns Cnty. Sch. District, *Books with Objections in SJCSD*, https://www.stjohns.k12.fl.us/media/libraries/books-with-objections/ (last modified May 29, 2024) (showing the SJCSD school board's decisions on the objections to each of the four books).

107.   Parent Tressler learned that at its May 28, 2024, meeting, the SJCSD school board would be considering objections to four books that were in the SJCSD library collection: *Slaughterhouse Five* by Kurt Vonnegut; *Freedom Writers Diary* by Erin Gruwell and Freedom Writers; *l8r, g8r* by Lauren Myracle; and *A Stolen Life* by Jaycee Lee Dugard.

108.   At the time of the May 28, 2024, hearing, the person who lodged all four objections no longer had children in the SJCSD schools.

109.   The objector claimed that all four books contained "explicit, graphic, violent disturbing scenarios," and violated the Statutory Objections, specifically the second Statutory Objection that concerns material that allegedly "[d]epicts or describes sexual conduct."

110.   In response to the objections, the board voted to restrict access to two of the books— *Slaughterhouse Five* and *A Stolen Life*—to 11th and 12th grade students, and access to two of the books— *Freedom Writers Diary* and *l8r, g8r*—to students in 12th grade who have obtained parental consent.[20]

111.    Parent Tressler disagreed with the SJCSD school board's decision on all four books.

112.   Parent Tressler has repeatedly been told by SJCSD that there is no process for her to object to board decisions to remove books from use in SJCSD.

---

[20] *Id.*

113.   In a May 20, 2024, email from Associate Superintendent Dawn Sapp, Parent Tressler was told that "[c]urrently, there is not a formal process [for a parent to object to the removal or restriction of a book] however, you may share your views with Superintendent Forson or our Board members via email or during public comment at a Board meeting."[21]

114.   Most recently, in a May 22, 2024, email from Associate Superintendent Sapp, Parent Tressler was told that "[o]ur guidance and procedures do not address a formal process for an appeal after a title is removed. . . . [t]he public is invited to offer comment at each Board meeting and all viewpoints are welcome."[22]

115.   Parent Tressler knows that any request for access to the State Review Process will be futile as it will be dismissed because she holds the State's disfavored view. She would otherwise file multiple requests for access to the State Review Process because she "disagrees with the determination made by the [SJCSD] school board on [an] objection to the use of a specific material," and would file additional such requests in the event she disagrees with future determinations, but the State Department of Education has made clear that doing so would be futile.

---

[21] Email from Dawn Sapp, Assoc. Superintendent, to Anne Watts Tressler (May 20, 2024, 12:52 EDT).

[22] Email from Dawn Sapp, Assoc. Superintendent, to Anne Watts Tressler (May 23, 2024, 6:13 EDT).

## CLAIMS FOR RELIEF

### Count I

### First and Fourteenth Amendments to the United States Constitution Under 42 U.S.C. § 1983: Viewpoint Discrimination (H.B. 1069, as applied)

116. Plaintiffs reallege and incorporate by reference the paragraphs written above as if fully restated and set forth herein.

117. The free speech protections of the First Amendment to the United States Constitution are incorporated against Florida and its agencies through the Fourteenth Amendment to the United States Constitution.

118. "[B]arring only speech that endorses [certain] ideas . . . penalizes certain viewpoints–the greatest First Amendment sin." *Honeyfund.com, Inc.*, 94 F.4th at 1277. Such viewpoint discrimination is prohibited under the First Amendment to the United States Constitution.

119. As applied, H.B. 1069 makes the State Review Process available only to parents who seek to express their disagreement with and challenge a local school board decision to *retain* (*i.e.*, not to remove) specific material, but does not make that same process available to parents who seek to express their disagreement with and challenge a local school board decision to *remove* specific material.

120. As applied, H.B. 1069 provides parents who unsuccessfully objected to the use of specific material at the local school board level with access to a process by which the State will review their objection.

121.　As applied, H.B. 1069 denies parents who unsuccessfully *opposed* an objection to the use of specific material at the local school board level from accessing any process by which the State would review the school board's acceptance of the objection.

122.　As applied, because H.B. 1069 enables parents who disagree with a local school board decision retaining a book to try to impose financial costs on the local school district by initiating the State Review Process, but does not provide that same ability to parents who disagree with a local school board decision removing a book, the statute financially incentivizes local school boards not to retain (*i.e.*, to remove) books.

123.　As applied, H.B. 1069 is not viewpoint neutral, in violation of the First Amendment to the United States Constitution, because it provides or denies access to the State Review Process on the basis of a parent's viewpoint–specifically, by making access to the State Review Process dependent on whether the parent's viewpoint is (1) to disagree with a local school board's decision *to remove* particular material, or (2) to disagree with a local school board's decision *not to remove* particular material.

## Count II
### First and Fourteenth Amendments to the United States Constitution Under 42 U.S.C. § 1983: Viewpoint Discrimination (State Review Process Rule, Facial)

124.    Plaintiffs reallege and incorporate by reference the paragraphs written above as if fully restated and set forth herein.

125.    The State Review Process Rule, on its face, allows the appointment of a special magistrate to be considered "for parental objections to any type of material," empowers special magistrates to review local school board determinations and make recommendations on resolution to the State Board of Education, and limits special magistrate appointments to requests from parents who "filed an objection with the school board," limited to the Statutory Objections.

126.    Under the State Review Process Rule, only a parent who objects to the *use* of particular material may file an "objection," while a parent who *supports* the use or opposes the removal of particular material cannot file an "objection."

127.    On their face, these provisions of the State Review Process Rule make the State Review Process available only to parents who previously objected to the use of material before a local school board, and whose objections were not successful.

128.    On their face, these provisions of the State Review Process Rule make the State Review Process unavailable to parents who disagree with a local school board's determination to remove material pursuant to an objection.

129. On its face, the State Review Process Rule is not viewpoint neutral, in violation of the First Amendment to the United States Constitution, because it provides or denies access to the State Review Process on the basis of a parent's viewpoint–specifically, by making access to the State Review Process dependent on whether the parent's viewpoint is (1) to disagree with a local school board's decision *to remove* particular material, or (2) to disagree with a local school board's decision *not to remove* particular material.

## Count III

### First and Fourteenth Amendments to the United States Constitution Under 42 U.S.C. § 1983: Viewpoint Discrimination (State Review Process Rule, As Applied)

130. Plaintiffs reallege and incorporate by reference the paragraphs written above as if fully restated and set forth herein.

131. The Parental Request Form adopted by the State Board of Education is incorporated by reference into the State Review Process Rule. Fla. Admin. Code R. 6A-1.094126(10).

132. The Parental Request Form's instructions state that "the special magistrate process is available to determine whether a district considered a parental objection to materials under procedures that are required under the law."

133. The Parental Request Form requires parents to describe how they "attempted to resolve *your* objection" (emphasis added) and to detail whether and

how the local school board failed to establish or follow procedures in "considering *your* objection" (emphasis added).

134.   The Parental Request Form only solicits information from parents who have objected to the retention, or continued use, of books. It does not solicit information from parents who object to book removals. Nor does it provide any flexibility in completing the form.

135.   A parent who did not file an objection to material, including a parent who disagrees with a local school board's decision to remove material following an objection, cannot accurately complete the Parental Request Form, and therefore cannot request access to the State Review Process.

136.   This interpretation of the State Review Process Rule's facial non-neutrality is confirmed by the State Board of Education's stated position that "a special magistrate is not available to contest a district's decision to remove material."

137.   The State Review Process Rule, including the Parental Request Form, is not viewpoint neutral, and thus violates the First Amendment to the United States Constitution, because it provides or denies access to the State Review Process on the basis of a parent's viewpoint–specifically, by making access to the State Review Process dependent on whether the parent's viewpoint is (1) to disagree with a local school board's decision *to remove* particular material, or (2) to disagree with a local school board's decision *not to remove* particular material.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants for each of the causes of action raised herein. Plaintiffs respectfully request that this Court enter judgment in their favor and that the Court:

A. Declare that the relevant portion of H.B. 1069 as applied, the State Review Process Rule, including the Parental Request Form, and the actions described in this complaint violate the First and Fourteenth Amendments to the United States Constitution.

B. Permanently enjoin Defendants from initiating the State Review Process as implemented by the State Review Process Rule, including by appointing a special magistrate pursuant to the State Review Process Rule, in violation of the First and Fourteenth Amendments to the United States Constitution.

C. Award to plaintiffs costs incurred in pursuing this action, including reasonable attorneys' fees and reasonable and necessary expenses, pursuant to 42 U.S.C. § 1988(b) and other applicable authority.

D. Grant such other relief as this Court deems just and appropriate.


Dated: June 6, 2024                     Respectfully submitted,

By: */s/ Samantha J. Past*
Samantha J. Past
(Florida Bar No. 1054519)
Daniel B. Tilley

(Florida Bar No. 102882)
American Civil Liberties Union
Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
spast@aclufl.org
dtilley@aclufl.org

Brooke Menschel*
(D.C. Bar No. 900389)
Mark B. Samburg*
(D.C. Bar No. 1018533)
Robin F. Thurston*
(D.C. Bar No. 151399)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
bmenschel@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org

*Application for pro hac vice forthcoming

Sam Boyd
(Florida Bar No. 1012141)
Southern Poverty Law Center
2 Biscayne Blvd., Suite 3750
Miami, FL 33131
(305) 537-0574
Sam.Boyd@splcenter.org

Counsel for the Plaintiffs