# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

NANCY TRAY; STEPHANA FERRELL;
ANNE WATTS TRESSLER,

    *Plaintiffs,*

                          Case No. 4:24-cv-00238-AW-MAF

*v.*

FLORIDA STATE BOARD OF
EDUCATION; et al.,

    *Defendants.*

_____/

## MOTION TO DISMISS

The First Amendment of the United States Constitution prohibits government regulations of speech; it does not prohibit a state from granting certain individuals procedural rights to seek review of a government decision. The Florida Legislature created a procedure that allows individuals who submit a formal objection to materials in school libraries to seek limited review of the school district's decision to reject that objection. In so doing, the Florida Legislature has *not* violated the First Amendment.

Defendants move to dismiss Plaintiffs' Complaint because they have failed to establish that they have standing to challenge the law and rule at issue and because they have failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), (6).

# I.   **Introduction**

Seven years ago, the Legislature required each local school district to create a process allowing a parent or resident to raise an "objection" to any material made available in a school library that may be pornographic, obscene, or otherwise inappropriate. If a district agrees that the material is inappropriate, it must discontinue use of the material in its libraries. Plaintiffs do not challenge the constitutionality of that commonsense mandate for school districts to consider parental objections.  Rather, Plaintiffs bring a First Amendment challenge to an appeal process created by the Legislature in 2023, whereby the parent who originally objected can request the State Board of Education to review whether the local school district had a legally adequate objection process and followed that process in disposing of the individual's objection, if the school district decided to *reject* the objection.  Plaintiffs contend that this state-level review for decisions to retain material impermissibly restricts Plaintiffs' speech based on their viewpoint, because there is no inverse option for parents like Plaintiffs who may want to appeal a local district's decision to approve an objection and *remove* the material from the library.

Plaintiffs' challenge should be dismissed because their generalized grievance about statutory appellate procedures is neither a concrete nor particularized harm sufficient to bestow standing. Their challenge also could not redress any harm caused by the statute or by the Defendants at issue. Moreover, there is no First

Amendment right to an appellate procedure governing public school library decisions, no viewpoint discrimination within the appellate procedure that currently exists, and no forum where Plaintiffs' viewpoints must be permitted.[1]

## II.  **Background**

Beginning in 2017, the Florida Legislature expressly placed responsibility upon each local school district for the content of all materials "made available in a school library." Ch. 2017-177, § 2, Laws of Fla. (amending Fla. Stat. § 1006.28(2)(a)). It also mandated that each district school board adopt a policy and process for allowing a parent or resident to raise an "objection" to such material and then "proffer evidence to the district school board that" the material "is pornographic or prohibited under s. 847.012, is not suited to student needs and their ability to comprehend the material presented, or is inappropriate for the grade level and age group for which the material is used." *Id*. (the "Local Objection Process"). If the district school board finds that the library material contains such content, the school

---

[1] Dismissal is also warranted because the Complaint is a classic shotgun pleading. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (explaining that a "shotgun pleading" is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or 10(b), or both). Indeed, the Complaint is the most common type of shotgun pleading – "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. at 1321. The Eleventh Circuit has referred to this type as "commit[ting] the mortal sin of re-alleging all preceding counts." *Id*. at 1322.

district must "discontinue use of the material for any grade level or age group for which such use is inappropriate or unsuitable." *Id*.

In 2022, the Legislature further mandated that each district school board submit an annual report to the Commissioner of Education identifying each material for which it "received an objection" and each material that was removed or discontinued "as a result of an objection." Ch. 2022-21, § 2, Laws of Fla. The Department of Education must publish and "regularly update" the list of materials that "were removed or discontinued as a result of an objection" and "disseminate the list" to school districts for consideration in their selection procedures. *Id*. Plaintiffs do not challenge the Local Objection Process or the Department's reporting requirements.

The law at issue in this case was enacted in 2023 and built on the foundation of the formal right to object that was created in 2017. House Bill 1069 directed the State Board of Education to promulgate an "objection form" for parents and residents[2] to use when complaining about material made available in a school or classroom library. Ch. 2023-105, § 6, Laws of Fla. It also added a new basis to object if the material "[d]epicts or describes sexual conduct" as defined in Florida's criminal obscenity statute, unless such material is for certain specified courses. *Id*.

_____

[2] The Legislature recently limited residents who are not parents or guardians of students to one objection of material per month. Ch. 2024-101, § 15, Laws of Fla.

As before, if the district school board finds that the library material contains prohibited content, it must discontinue use of the material, either entirely or for particular grade levels and age groups, as appropriate. *Id*.

Most relevant to this case, the Legislature also gave parents a process to appeal a district school board's decision to the State Board of Education:

> If a parent disagrees with the determination made by the district school board on the objection to the use of a specific material, a parent may request the Commissioner of Education to appoint a special magistrate who is a member of The Florida Bar in good standing and who has at least 5 years' experience in administrative law. The special magistrate shall determine facts relating to the school district's determination, consider information provided by the parent and the school district, and render a recommended decision for resolution to the State Board of Education within 30 days after receipt of the request by the parent. The State Board of Education must approve or reject the recommended decision at its next regularly scheduled meeting that is more than 7 calendar days and no more than 30 days after the date the recommended decision is transmitted.

*Id*. Plaintiffs refer to this provision as the "State Review Process." Compl. ¶¶ 3, 30.

House Bill 1069 also required the State Board of Education to adopt rules, including forms, necessary to implement the Local Objection Process and the State Review Process. Ch. 2023-105, § 6, Laws of Fla. Accordingly, the State Board adopted Rule 6A-1.094126, Florida Administrative Code, which explains that the parent who "filed an objection with the school board" may request the appointment of a special magistrate to determine whether the school board "failed to establish an adequate policy to address objections" or "failed to follow that policy when

resolving the objection." Rule 6A-1.094126, F.A.C.[3] After a special magistrate is appointed, the parent and the school district may present evidence and call witnesses at a hearing and, if permitted by the special magistrate, submit written memoranda. The special magistrate then prepares a recommendation for resolution to the State Board. *Id*. Notably, Rule 6A-1.094126 makes clear that the "[r]elief available to a parent under the special magistrate process does not include the removal of material or limiting student access to material." *Id*.

Plaintiffs filed this lawsuit to challenge the constitutionality of the State Review Process in House Bill 1069 and Rule 6A-1.094126. Plaintiffs allege three counts of viewpoint discrimination in violation of the First Amendment on the theory that the State Review Process is only available to a parent who objects to material but not available to Plaintiffs who support material. Compl. ¶¶ 116-137. Count I is an as-applied challenge to the State Review Process in House Bill 1069, alleging that, as applied, the law does not give Plaintiffs "access to a process" by which the State Board would review a local district's removal of material. *Id*. ¶¶ 119-23. Count II is a facial challenge to Rule 6A-1.094126 alleging that, on its face, the law limits the State Review Process only to parents who previously objected to material before

_____

[3] The State Board also adopted Rule 6A-7.0714 to fulfill its statutory duty to provide school districts with a template for parents to use when objecting to materials under the Local Objection Process. *See* Fla. Stat. § 1006.28(2)(a)2. (2023). Plaintiffs do not challenge the constitutionality of this rule.

a local district and explains that a special magistrate is appointed only to consider "parental objections" to material but not parental support for material. *Id*. ¶¶ 125-29. Finally, Count III is an as-applied challenge to the Rule based on the Department's denial (and likely future denial) of Plaintiffs' requests to access the State Review Process to appeal a district's decision to remove material. *Id*. ¶¶ 94-96, 105, 115, 136.

Defendants move to dismiss the Complaint on standing and on the merits.

## III.   <u>Standing</u>

To have standing, a plaintiff must show (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). When a plaintiff is not the object of the government action or inaction being challenged, "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (internal quotations omitted).

### A.    **Injury-In-Fact**

A federal court may only resolve "a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Thus, a plaintiff must first show that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent. *Id*. at 423.

Plaintiffs describe their injury as the denial of their "request for access" to the State Review Process. Compl. ¶¶ 94-96, 105, 115. Their access to that process was denied, they allege, due to their "disfavored view" in support of the library material in question. *Id*. The State Review Process allegedly injures them by not including a procedure for parents who disagree with the local school district's removal decision to challenge that decision at the state level. In short, they insist on the right to intervene in the proceedings on behalf of the material, after the local school district decides to remove the material.

**1. Plaintiffs' injury is not concrete; it is merely procedural.**

Plaintiffs' inability to intervene on behalf of removed material does not cause any concrete harm to them. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*— is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). In other words, "a bare procedural violation, divorced from any concrete harm," cannot satisfy the injury-in-fact requirement. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

Plaintiffs' lack of access to the State Review Process to challenge the removal of library material is merely a procedural injury. *See Summers*, 555 U.S. at 496-97 (explaining that the inability to file comments on proposed United States Forest

Service actions is a procedural injury). Plaintiffs have failed to allege how that procedural injury affects a concrete interest or otherwise harms them.

Furthermore, as applied by Defendants, the State Review Process does not provide any relief with respect to the removal of, or access to, material. *See* Rule 6A-1.094126(4), F.A.C. ("Relief available to a parent under the special magistrate process does not include the removal of material or limiting student access to material."). It is solely available to consider whether a district adhered to its own procedures under the Local Objection Process. *Id*. It is not available to overturn judgments about whether books should be removed or retained on the library shelves. The statutory provisions controlling the Local Objection Process give procedural rights to objectors, and only to objectors. Thus, because the State Review Process is limited to reviewing and remedying only procedural noncompliance and Plaintiffs admit they are not going to be objectors, there can be no harm to Plaintiffs from their exclusion from the State Review Process other than a procedural harm. Such harm is not concrete.

## 2. Plaintiffs' injury is not particularized; it is shared by a large portion of the public.

For an injury to be "particularized," it must affect the plaintiff "in a personal and individual way." *Spokeo*, 578 U.S. at 339. "Put slightly differently, the injury cannot be 'undifferentiated,' but rather must be 'distinct' to the plaintiff." *Gardner*

*v. Mutz*, 962 F.3d 1329, 1342 (11th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 339). A generalized grievance cannot support standing. *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020).

Plaintiffs' interest in wanting a process for parents to appeal the removal of school library material is not distinct to them. Many other parents might want to challenge the removal. Such a generalized grievance is precisely the type of "undifferentiated" injury that prevents standing. "'When the asserted harm is shared in substantially equal measure by a large class of citizens,' it is not a particularized injury." *Wood*, 981 F.3d at 1315 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). Without a particularized injury, Plaintiffs are merely "'concerned bystanders' attempting to vindicate their 'value interests'" upon the curation of school libraries. *Gardner*, 962 F.3d at 1343 (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013)).

Furthermore, the State Review Process is unavailable to all parents except the original person who raised an objection. Rule 6A-1.094126(5)(b), F.A.C. That is, if the local school district decides to maintain the material, then only one person can access the State Review Process. It does not become available to all other parents who might disagree with the district's decision to maintain the material. Therefore, Plaintiffs' alleged injury – lack of access to the State Review Process – is common

to all parents but one, the person who raised the original objection. For this reason, Plaintiffs' alleged injury is the opposite of distinct and particularized.

The lack of a particularized injury underscores the procedural difficulty the State faces if it must allow parents the right to intervene to bring an appeal of a local school district's decision to remove library material. For example, if one thousand parents collectively disagree with the local school district's decision to remove a book, or to limit the book to upper-level grades, which of those parents must be given the opportunity to present evidence before the special magistrate? Plaintiffs have not alleged why their concerns are particularly more compelling than any other parents' interests who similarly oppose a removal decision.[4]

3. **Plaintiffs' speech is not impaired by the removal of material; the government speaks when it removes material from its own libraries.**

Plaintiffs' own speech is not impaired or discriminated against by the removal of material from a school library, and Plaintiffs have not alleged any viewpoint-based harm by the removal of material. Nor could they.

School districts "rightly possess significant discretion to determine the content of their school libraries." *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v.*

_____

[4] In other areas of agency decision-making, Florida's Administrative Procedure Act grants the right to intervene only to persons "whose substantial interests may be affected" or who are otherwise "substantially affected." §§ 120.54(5)(b)6., 120.56(1)(e), Fla. Stat.

*Pico*, 457 U.S. 853, 870 (1982) (plurality opinion). Although the Eleventh Circuit has not yet addressed whether the government's "book collection (and book removal) decisions" for school libraries are "government speech," *see ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1201-02 (11th Cir. 2009), the D.C. Circuit has explained that "the government speaks through its selection of which books to put on the shelves and which books to exclude," *PETA, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005).

Defendants maintain the position that the removal of material from public school libraries is government speech for which it has the complete discretion and freedom to speak through the removal of speech with which it disapproves. *Mech v. Sch. Bd. of Palm Beach Cnty., Fla.,* 806 F.3d 1070, 1074 (11th Cir. 2015); *see also United States v. Am. Libr. Ass'n, Inc.,* 539 U.S. 194, 1951 (2003) ("[P]ublic libraries must have broad discretion to decide what material to provide to their patrons."). Thus, no harm or concrete injury can come to Plaintiffs from a local or state government's decision to remove material from public schools.[5]

_____

[5] This is not a case about the right of access to information, alleging that material has been made inaccessible for an impermissible purpose. *Cf. ACLU of Fla.*, 557 F.3d 1177. Besides, the grounds for objections under the Local Objection Process are permissible purposes to remove material from school children. *See* Fla. Stat. § 1006.28(2)(a)2.b. (targeting pornographic, obscene, sexual, and other inappropriate material).

## B.    Causation

Even if Plaintiffs are somehow harmed by the removal of school library material, the injury is not caused by the Defendants. A local district school board is required under the plain text of House Bill 1069 to "discontinue use" of any material it finds to contain prohibited content. Fla. Stat. § 1006.28(2)(a).

To satisfy the causation requirement, "a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Jacobson*, 974 F.3d at 1253 (quoting *Lujan*, 504 U.S. at 560). Similarly, "a plaintiff lacks standing to sue over a defendant's action 'if an independent source would have caused him to suffer the same injury.'" *Walters v. Fast AC, LLC*, 60 F.4th 642, 650-51 (11th Cir. 2023) (quoting *Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012)).

To the extent Plaintiffs' case depends on the questionable harm of removed material, that injury is caused by district school boards that are not before this Court and that have "an independent obligation to follow the law." *City of S. Miami v. Governor*, 65 F.4th 631, 643 (11th Cir. 2023). Plus, Plaintiffs seek access to the State Review Process to review a *removal* decision by the district school boards that has already happened.  Defendants, who implement that State Review Process, would not even be involved until *after* the supposed harm occurs.

Under House Bill 1069, the Legislature has chosen not to have the State Board of Education second-guess a local district's decision to remove material that is potentially illegal or inappropriate. In other words, the State will not overturn such a decision, or even review it, and force a local government to carry library material against its will, unless otherwise required by law. This commonsense policy choice by the Legislature, to respect and abide by a local district's own objection to material, does not cause Plaintiffs any harm.

Furthermore, the State Board has implemented the State Review Process as a means to review only procedural deficiencies in the exercise of the Local Objection Process, not to review the district's opinion that certain material is not prohibited content. *See* Rule 6A-1.094126(4), (5)(d), (7)(b)4. & (9), F.A.C. (explaining that the State Review Process is intended to determine whether the district either failed to create a policy as required by the Local Objection Process or did not follow that policy when ruling on the objection). As explained above, the "[r]elief available to a parent" under the State Review Process "does not include the removal of material" to thereby overturn the judgment call of the local district school board. This limitation of the State Review Process further demonstrates that Plaintiffs' potential harm of removed material is not caused by the lack of access to the State Review Process, because the State Review Process does not actually dictate which materials should be on or off the library shelves.

## C.    Redressability

"Whether an injury is redressable depends on the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 660 (2021) (internal quotations omitted). That is, "it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers*, 555 U.S. at 493; *see also Jacobson*, 974 F.3d at 1254 ("[I]t must be the effect of the court's judgment on the defendant—not an absent third party—that redresses the plaintiff's injury.")

Plaintiffs seek two forms of relief. First, they request a declaration that "the relevant portion of H.B. 1069 as applied, the State Review Process Rule, including the Parental Request Form, and the actions described in this complaint violate the First and Fourteenth Amendments." Compl. at 35. Second, they seek a permanent injunction against Defendants "from initiating the State Review Process as implemented by the State Review Process Rule." *Id*.

The problem for Plaintiffs is that neither of these forms of relief redress Plaintiffs' alleged injury of being denied access to the State Review Process. If successful in this action, they still would not have a process to appeal a local school district's decision to remove library material. All Plaintiffs would accomplish by a favorable judgment is the elimination of the State Review Process itself. But to achieve the kind of state-level review Plaintiffs seek – to review a local school district's *removal* of a book – would require an act of the Legislature to craft such

an appeal process.  Anything less does not actually redress Plaintiffs' alleged procedural injury.

For all of these reasons, Plaintiffs do not have standing to challenge the constitutionality of the State Review Process.

**IV.** **First Amendment**

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. AMEND. I.  This right to free speech applies to the states via the Fourteenth Amendment. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale,* 901 F.3d 1235, 1239 (11th Cir. 2018). Whether the state has abridged a person's free speech right "depends crucially on whose speech is at issue." *Leake v. Drinkard*, 14 F.4th 1242, 1247 (11th Cir. 2021). It also can depend on where the speech occurs. *See Cornelius v. NAACP Legal Def. & Educ. Fund*, Inc., 473 U.S. 788, 799–800 (1985). But before all this, the application of the principles of the First Amendment rest on a more basic requirement: the challenged government action must actually constitute a regulation on speech.

**A.** **No First Amendment Rights Implicated**

The heart of Plaintiffs' complaint is not really a First Amendment right but a supposed right to an appellate-like process.

16

Specifically, Plaintiffs complain that the State has not opened the State Review Process for them to make the State Board of Education review the school district's handling of another person's objection that led to the removal of material from school libraries. But the First Amendment does not require the government to provide Plaintiffs with an official channel to level grievances about book removals. In other words, Plaintiffs do not have a First Amendment right to compel the government to create a process, much less one of Plaintiffs' own design.

Notably, the Eleventh Circuit's decision in the "school library book case" of *ACLU of Florida, Inc. v. Miami-Dade County School Board*, 557 F.3d 1177 (11th Cir. 2009), featured a "four-tiered administrative procedure for reviewing citizen requests to remove books from the district's libraries," including an "appeal" to the superintendent and another "appeal" to the district school board. 557 F.3d at 1184, 1202. This process was driven entirely by an "initial complaint about a book." *Id*. Nothing in the opinion suggests that a complaint-driven process could infringe on any First Amendment right. Defendants do not think this Court should find such a right, either.

Moreover, parents and residents such as Plaintiffs are free to voice their outrage at the school district's removal decisions in all manner of ways, through school board meetings, letter-writing campaigns, picket lines, op-eds, social media posts, and the like. Indeed, because any school board meetings, or any committee

meetings that will provide recommendations to the school board, under the Local Objection Process are required to be open to the public pursuant to section 286.011(1), Florida Statutes, there will always be an opportunity for proponents of material to speak in its defense. *See* Fla. Stat. § 286.0114(2) (2023).

**B.     No Viewpoint Discrimination**

Even if Plaintiffs have a First Amendment right to demand the process currently denied to them, there is no viewpoint discrimination in the process that currently exists. "Viewpoint discrimination is 'an egregious form of content discrimination' that occurs 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the regulation.'" *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1240-41 (11th Cir. 2019) (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995)). In other words, a "viewpoint-based law . . . regulates speech based upon agreement or disagreement with the particular position the speaker wishes to express." *Id*. Thus, to distinguish between viewpoint and content discrimination, a court "must determine whether the speech restriction was based on 'the specific motivating ideology' or particular position of the speaker, or 'the topic discussed' or the substance of the message more generally." *Id*.

Plaintiffs allege that, by creating the State Review Process, the State favors viewpoints that agree with removing books and disfavors viewpoints seeking to

retain them. Compl. ¶¶ 4-5. But the plain texts of House Bill 1069 and Rule 6A-1.094126 are viewpoint-neutral. There is nothing in either text that limits the viewpoints a parent can raise within the categories for an objection to material made available in a school library. A parent may raise any particular position he or she wishes, and the motivating ideology behind an objection has no bearing on the availability of either the Local Objection Process (which Plaintiffs do not challenge) or the State Review Process. Thus, Plaintiffs' contention that the State favors book removals or discriminates against viewpoints is not supported by the texts at issue.

More obviously, the State Review Process does not discriminate on the basis of viewpoint because, as applied, it is only available to the parent who filed the original objection while excluding all other parents irrespective of their viewpoints. Rule 6A-1.094126(5)(b), F.A.C. In other words, additional parents who support removal and parents like Plaintiffs who oppose removal are alike excluded from the State Review Process. Thus, Plaintiffs' central theory that "[p]arents who seek to retain materials . . . are excluded from the State Review Process" ignores the additional exclusion of all parents (except one) who favor removing the material. An appellate process for the party who initiated the proceedings below is hardly viewpoint discrimination, or even controversial.

The State Review Process is merely that – a process. It allows a parent or resident who is unsuccessful at convincing a local school district to remove material

to appeal that determination to the State Board of Education.  And it is not a separate process but a continuation of the Local Objection Process. It is little different in kind than any other administrative appeal.  In short, there is no viewpoint discrimination in a statutory right to appeal.

## C.     The State Review Process is Not a Forum for Speech

The Local Objection Process and any subsequent State Review Process is also not a forum for speech or a means of communication on government property for public discourse or expressive activity among citizens. *See Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 802-04 (1985) (describing types of forums).  Instead, it is a complaint process by which a parent or resident can directly notify the school authorities of library material that should be considered for removal. "The fact that private parties take part in the design and propagation" of the government's curation of its own school libraries – which is government speech, as explained above – does not "transform the government's role into that of a mere forum-provider." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 217 (2015). Therefore, forum analysis does not apply.

Governments create complaint processes and complaint portals all the time without creating a forum for public discourse. For example, a government-run utility company might provide a process for customers to report power outages, without also providing customers with a process to report that their electricity is working

fine. A licensing agency might accept complaints about a licensee for further investigation, without also providing a forum for citizens to compliment the licensee. A health inspection agency might have a process to receive information from the public about unsanitary conditions, without also providing a process to report or discuss sanitary locations. Indeed, even the Court's CM/ECF system accepts "complaints" from persons about alleged *violations* of law, but the Court does not have a converse process to accept and debate allegations about a person's *adherence* to the law. The Court's "complaint" portal merely begins the process of adjudication, and no one would consider CM/ECF a forum for public discourse.

The same is true for the Local Objection Process and the State Review Process. By providing a procedure for parents and residents to notify school authorities of library material that may be inappropriate for children, neither the State nor the local school district has created a forum to accept other types of commentary or to facilitate discourse and communication among individuals in a manner indicative of a forum. Thus, the restrictions on viewpoint discrimination applicable to a forum are inapplicable here.

### D. Any Possible Forum is Reasonable and Not Suppressive of Speech

If the Local Objection Process and the State Review Process are somehow considered a forum at all (they are not), they would be a nonpublic forum. Unlike public forums, the Legislature did not create these processes "for purposes of

providing a forum for expressive activity." *Cornelius*, 473 U.S. at 805. And like nonpublic forums, here "the government is acting as a proprietor, managing its internal operations" by deciding which material should remain in its own school libraries. *Walker*, 576 U.S. at 216 (quoting *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678-79 (1992)); *see also Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1239 (11th Cir. 2019) (finding a nonpublic forum where the FHSAA did not intend to open the football stadium loudspeaker to a broad range of discourse by private speakers or intend to create a forum for the free expression of ideas by members of the public more broadly).

By creating the Local Objection Process and the State Review Process, the Legislature did not designate a forum for debate over what school libraries should have on their shelves. Rather, the purpose and limited nature of these processes is to provide an avenue to raise concerns about currently available library materials that may expose children to pornographic, obscene, or other inappropriate material.

In such a nonpublic forum, "[t]he challenged regulation need only be reasonable, as long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992). And distinctions in access on the basis of subject matter and speaker identity "are inherent and inescapable in the process of

limiting a nonpublic forum to activities compatible with the intended purpose of the property." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 49 (1983).

The State Review Process's restrictions on expressive activity are reasonable. They were designed to allow the State Board of Education to ensure that the school district afforded the parent the required Local Objection Process under state law and district policy. The Local Objection Process, of course, is designed to make the school district aware of library material that might expose children to pornographic, obscene, or other inappropriate material. The focus on "objections" to current material correlates perfectly with the intended purposes of the Local Objection Process and the State Review Process. These processes are viewpoint neutral, because they apply evenhandedly without regard for the idea being expressed within an objection. At most, objections are restricted by the statutory topics specified for such objections (i.e., pornography, obscenity) – a form of content-based regulation – but objections can take the form of any opinion or idea within those topics.

The objection-based processes outlined in House Bill 1069 and Rule 6A-1.094126 are not designed to suppress Plaintiffs' speech. Plaintiffs' preferred speech in support of the status quo is simply not compatible with and does not serve the purpose of identifying potentially harmful material. "Speech in a nonpublic forum can be restricted in order to preserve the forum 'for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and

not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1240 (11th Cir. 2019) (quoting *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 12 (2018)). In light of the purpose and surrounding circumstances of the Local Objection Process and the State Review Process, the limitation on speech is reasonable and, though content-based, the restriction is not designed to suppress Plaintiffs' viewpoints.

For the foregoing reasons, Plaintiffs' Complaint should be dismissed.

Dated: June 27, 2024      Respectfully submitted,

*/s/ Raymond F. Treadwell*
**RAYMOND F. TREADWELL**
FLORIDA BAR NUMBER: 93834
**CAROLINE MAY POOR**
FLORIDA BAR NUMBER: 1018391
**LAWSON HUCK GONZALEZ, PLLC**
215 South Monroe Street, Suite 320
Tallahassee, FL 32301
Telephone: 850-825-4334
ray@lawsonhuckgonzalez.com
caroline@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com
leah@lawsonhuckgonzalez.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed

with the CM/ECF website and served on June 27, 2024 to all counsel of record.

*/s/ Raymond F. Treadwell*
**RAYMOND F. TREADWELL**


## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

I hereby certify that the foregoing motion, including body, headings,

quotations, and footnotes, and excluding those portions exempt by Local Rule

7.1(F), contains 5,891 words as measured by Microsoft Word.

*/s/ Raymond F. Treadwell*
**RAYMOND F. TREADWELL**