# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

NANCY TRAY; STEPHANA
FERRELL; ANNE WATTS
TRESSLER,

     *Plaintiffs*,

        v.

FLORIDA STATE BOARD OF
EDUCATION, et al.,

     *Defendants*.

Case No. 4:24-cv-00238-AW-MAF

_____

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Plaintiffs, three parents of children in Florida public schools, disagree with decisions made by their children's school districts to remove or restrict access to books in those districts' school libraries. Defendants have denied them access to a state-created process to seek review of those decisions. Only parents who disagree with a school district's decision *not* to remove or restrict access to books have access to this process, which is conducted at their districts' expense. Because Plaintiffs hold a view disfavored by Defendants—opposition to the removal or restriction of books in public schools—Defendants have barred them, and their expression, from the review process entirely. "[B]y barring only speech that endorses [certain] ideas, [Defendants] penalize[] certain viewpoints—the greatest

First Amendment sin." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1277 (11th Cir. 2024).

Parents' ability to express disagreement through the State's process is the only expression at issue here: Plaintiffs are not asking this Court to review local district decisions, despite their disagreement with those decisions. Plaintiffs only ask that when conducting such reviews, the Florida State Board of Education make the process available equally or not at all.

Because Plaintiffs' injury arises directly from Defendants' violation of Plaintiffs' First Amendment rights, such that standing and the merits are intertwined, Plaintiffs first address Defendants' arguments that the State Review Process neither implicates a First Amendment Right nor impermissibly discriminates against Plaintiffs because of their viewpoints. Plaintiffs subsequently address Defendants' arguments that they lack standing, before turning to Defendants' arguments regarding the forum created by the State Review Process.[1]

---

[1] Defendants also suggest in a footnote that the complaint is an impermissible "shotgun pleading." Not so. As another judge in this district recently concluded, a complaint that, like Plaintiffs', incorporates "all of the allegations in the preceding counts" is not an impermissible shotgun pleading because it "still provide[s] Defendant fair notice of the claims against it and the grounds upon which those claims rest." *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Dist.*, 3:23-cv-10385-TKW-ZCB, 2024 WL 133213, at *1 (N.D. Fla. Jan. 12, 2024). Plaintiffs' complaint "adequately put [the Board] on notice of the specific claims against them and the factual allegations that support those claims." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015). Defendants never explain why they believe otherwise. Nor could they. *See* Compl. ¶¶ 21-32 (statutory process), 37-48

## Background

In 2023, Florida enacted H.B. 1069. Among other provisions, the section codified at Florida Statutes § 1006.28(2)(a)6 created a mechanism by which parents may ask the Florida State Board of Education ("the Board") to review decisions of their local school boards on objections to the use of books ("State Review Process"). *See, e.g.*, Compl. ¶¶ 23, 30-32. For a local decision to be subject to the State Review Process, the statute requires that the original parental objection, on which the local school board acted, be to the *use* of material on one of four statutorily defined bases that material should be discontinued ("Statutory Objections"). Compl. ¶¶ 26-30. The only statutory prerequisite that a parent must meet in order to access the State Review Process is to "disagree[] with the determination" of a local school board on such an objection. The statute does not limit access to the State Review Process to those parents who lodged Statutory Objections with their local school board. *See* Compl. ¶ 30.

The Board adopted multiple rules to implement the State Review Process. One rule created a template for an objection form that local districts must provide to parents seeking to lodge a complaint with their local district. Compl. ¶¶ 37-48. That

_____

(objection form), 49-70 (Board of Education Rule), 71-115 (parent-specific allegations). Regardless, faced with a shotgun pleading, "a district court must sua sponte give [the litigants] one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).

form, which cannot be substantively modified, lists the Statutory Objections as the only available bases to object to the use of material. Compl. ¶¶ 40-46. A separate rule, Rule 6A-1.094126, Florida Administrative Code, implemented the State Review Process ("State Review Process Rule"). Under that Rule, only parents who objected to the use of material based on a Statutory Objection may access the State Review Process. *See* Compl. ¶¶ 55-61.

As part of the State Review Process, if the Commissioner of Education appoints a special magistrate, the special magistrate must conduct a hearing to review whether a district considered objections subject to a process meeting existing state requirements. Compl. ¶¶ 30, 32; Rule 6A-1.094126(4), (9)(c), F.A.C. The special magistrate must issue a recommendation to the Board, who must accept factual findings unless they are unsupported by evidence, and must accept legal conclusions unless a contrary conclusion would be more reasonable. Compl. ¶¶ 30, 33-34; Rule 6A-1.094126(9)(c), F.A.C. The school district whose decision is subject to the State Review Process bears the costs of the special magistrate, regardless of the outcome of the process. Compl. ¶¶ 30, 35.

Plaintiff Stephana Ferrell is a parent of Orange County Public Schools students. Compl. ¶ 71. After the Orange County school board removed *Shut Up!* by Marilyn Reynolds from school facilities, Ferrell sought access to the State Review Process to review that decision. Compl. ¶¶ 72-82. Her request was denied because,

according to the Board, "[a] special magistrate is not available to contest a district's decision to remove material." Compl. ¶¶ 94-96.

Plaintiffs Nancy Tray and Anne Watts are parents of St. Johns County public school students. Compl. ¶¶ 97, 106. Both Tray and Watts disagree with decisions by the St. Johns County school board restricting the availability of four books: *Slaughterhouse Five* by Kurt Vonnegut; *Freedom Writers Diary* by Erin Grunwell and Freedom Writers; *l8r, g8r* by Lauren Myracle; and *A Stolen Life* by Jaycee Lee Dugard. Compl. ¶¶ 98, 101-105, 107. They would have requested review of those decisions through the State Review Process had they not known their requests would be futile because the Board would deny them on the same grounds as Ferrell's request. Compl. ¶¶ 105, 115.

Having been excluded from the State Review Process due to their viewpoints, Plaintiffs filed this lawsuit. They allege three counts of viewpoint discrimination in violation of the First Amendment to the United States Constitution. Plaintiffs allege that both H.B. 1069 and the State Review Process Rule are viewpoint discriminatory as applied because the Board provides access to the State Review Process only to parents with a certain viewpoint. Compl. ¶¶ 116-123, 130-137. Plaintiffs further allege that the State Review Process Rule is facially unconstitutional because, as drafted, it only permits parents with certain viewpoints to access the State Review Process, excluding all others. Compl. ¶¶ 124-129.

Defendants moved to dismiss, arguing that Plaintiffs lack standing under Federal Rule of Civil Procedure 12(b)(1) and failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## Argument

Defendants' Motion misconstrues Plaintiffs' alleged injury, misunderstands Plaintiffs' claims, and misreads precedent. Applying the law to the Plaintiffs' injury and claims as pled, and viewing the facts in the light most favorable to Plaintiffs, as required on a motion to dismiss, *Butler v. Sherriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012), demonstrates that Defendants' Motion must be denied.

## I. Excluding Plaintiffs from the State Review Process is Viewpoint Discriminatory in Violation of the First Amendment.

Defendants assert that the State Review Process does not implicate Plaintiffs' free speech interests, and alternatively, that it is not viewpoint discriminatory. Defendants argue that as a result, Plaintiffs lack standing and have not stated a claim. Defendants are incorrect.

Plaintiffs seek to engage in First Amendment protected speech by expressing, through the State Review Process, their disagreement with local districts' decisions on objections to books. The State Review Process as set forth in § 1006.28(2)(a)6 enables parents to express that type of disagreement and is facially viewpoint

neutral. Yet while the statutory text is viewpoint neutral,[2] the Board's application of the statute is viewpoint discriminatory. Compl. ¶¶ 116-123.

The hallmark of whether expression is entitled to First Amendment protection for purposes of a viewpoint discrimination analysis is whether a particular expression embodies a viewpoint. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.").

The State Review Process Rule, which incorporates the Statutory Objections by reference, is facially viewpoint discriminatory, as it makes access dependent on having filed an objection that expresses one of four State-favored viewpoints. *See* Compl. ¶¶ 55-56. Defendants have effectively excluded Plaintiffs from expressing their disagreement through the State Review Process specifically *because of* their perspective—*disagreement* with a school district decision removing or restricting

---

[2] The statute establishing the State Review Process sets forth the Statutory Objections and requires a parent seeking access to the State Review Process only to disagree with a local school board's determination on the use of specific material, regardless of whether that determination is to remove, restrict, or retain material. It does not require the parent to be the one to have lodged the initial objection. *See generally* Compl. ¶ 30 (quoting § 1006.28(2)(a)6, which provides that "[i]f a parent disagrees with the determination made by the district school board on the objection to the use of a specific material, a parent may request [access to the State Review Process]"); *see also* Mot. to Dismiss 5 (describing the statute as giving "parents a process to appeal a district school board's decision to the [Board]" without noting any limitation).

books or materials. Defendants admit that Plaintiffs are excluded from expressing their disagreement through the State Review Process and do not contest that any parent who shares their viewpoint would be similarly excluded. *See generally* Mot. to Dismiss 18. Plaintiffs' request for equal access to express their disagreement through the State Review Process should survive Defendants' 12(b)(6) Motion on that concession alone.

The Eleventh Circuit's decision in *Honeyfund.com v. Governor*, 94 F.4th 1272 (11th Cir. 2024), provides a helpful analog. There, the court rejected Florida's statutory scheme "prohibit[ing] mandatory employee meetings–but only when those meetings include speech endorsing certain ideas." *Id.* at 1278. The scheme was subject to First Amendment scrutiny since "only mandatory meetings *that convey a particular message and viewpoint* are prohibited," and the only way to determine whether a meeting is prohibited is to "'examine the content of the message that is conveyed.'" *Id.* at 1278-79 (citation omitted). The same analysis demonstrates that the First Amendment protects Plaintiffs' requests here. The Board can only determine whether Plaintiffs' expression of disagreement with their local school board's decision is within the proper scope by "examin[ing] the content of the message that is conveyed." A parent seeking to express disagreement with a school board's determination to *retain* a book that the parent believes violates one of the Statutory Objections may access the State Review Process, but one who objects to

*removing* a book pursuant to a Statutory Objection may not.[3] Where, as here, "the conduct regulated depends on–and cannot be separated from–the ideas communicated, a law is functionally a regulation of speech." *See Honeyfund*, 94 F.4th at 1278.

Two courts within this district have already recognized that the State Review Process treats parents differently based on their viewpoints. In *PEN American Center Inc. v. Escambia County School District*, another judge in this district noted that the State Review Process "is only available to parents when a local school board denies an objection to a book being 'made available' . . . it cannot be used to challenge the board's decision granting an objecting and removing a book." No. 3:23-cv-10385-TKW-ZCB, 2024 WL 133213, at *2. And in *Parnell v. School Board of Lake County*, this Court rejected an argument advanced by the defendants in that case that parties seeking to challenge book removals should first express themselves through the State Review Process. The Court found that the State Review Process "deals with objections to the *use* of specific materials and says nothing of removals." No. 4:23-cv-414-AW-MAF, 2024 WL 2703762, at *4 (N.D. Fla. Apr. 25, 2024).

---

[3] *See infra* n.8.

**A. The protected character of Plaintiffs' expression, and the discriminatory nature of the Board's implementation of the State Review Process, are straightforward.**

Defendants consistently misconstrue the nature of Plaintiffs' protected interest and the Board's viewpoint discriminatory actions. *See, e.g.*, Mot. 10 (inaccurately suggesting that Plaintiffs are merely attempting to affect the curation of school libraries); Mot. 11 (mischaracterizing the First Amendment expression that Plaintiffs allege is protected as pertaining to removal of material from a school library); Mot. 13 (framing Plaintiffs' injury as stemming from "the removal of school library material" when arguing that Plaintiffs' injury is not traceable to Defendants). Contrary to Defendants' assertions, neither book selection policies nor book removals are at issue in this case.[4] Plaintiffs' claims, and the violation of their First Amendment rights, derive from what happens *after* a district removes or restricts a book—namely being denied the opportunity to express themselves based on the viewpoint of that expression. That exclusion from the State Review Process,

---

[4] Because control over the content of school libraries is not at issue here, Defendants' argument that any such control constitutes government speech is not relevant. Although outside the scope of this case, determining when "government-public engagement transmit[s] the government's own message," requires examination of *facts* related to "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Shurtleff v. City of Boston*, 596 U.S. 243, 252 (2022). Plaintiffs are not aware of any history of the government treating school library book curation as a government mouthpiece, nor can Defendants claim to endorse the views expressed by every book in school libraries, which typically contain a variety of views.

which was established and is administered by Defendants and is in their exclusive control, is the root of the harm that Plaintiffs have suffered. Plaintiffs only want the same opportunity to express their disagreement as that afforded to parents who hold the opposing viewpoint.

At the outset, Defendants wrongly assert that Plaintiffs' First Amendment rights are not implicated by the State Review Process. The weakness of this argument is evident from Defendants' own briefing: Defendants do not point to a single case—from within the Eleventh Circuit or otherwise—that supports their argument that providing Plaintiffs with equal access to express disagreement with local school board decisions through the State Review Process is not entitled to First Amendment protection. Instead, their only citation concerns neither a viewpoint discrimination claim nor any allegation that any person, parent or otherwise, was denied access to a process to review school board decisions related to the use of books. *See* Mot. 17 (citing *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1201-02 (11th Cir. 2009)).

Next, Defendants attempt to justify the Board's viewpoint discrimination by arguing that excluding Plaintiffs and others who share their viewpoint is mandated by, and inherent to, the State Review Process itself. *See* Mot. 19-20. That argument fails because, on its face, the statute would allow Plaintiffs to express their views through the State Review Process. *See supra* n.1 and accompanying text. Moreover,

the Supreme Court has already determined that the government cannot constitutionally exclude disfavored speech by baking a restriction on expression based on viewpoint into the statute or program itself. *Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 547 (2001) ("[The government] cannot recast a condition on [a benefit] as a mere definition of its program in every case, lest the First Amendment be reduced to a simple semantic exercise."). In *Legal Services Corporation*, the Court struck down a funding program that barred grantees from providing legal representation that involved challenging the validity of a law. Finding that the restriction was viewpoint discriminatory, the Court held that Congress's "attempt to draw lines around the [] program to exclude from litigation those arguments and theories Congress finds unacceptable" did not pass constitutional muster. *Id.* at 546. Because the State Review Process, like the *Legal Services Corporation* condition, "operates to insulate current . . . laws from constitutional scrutiny and certain other legal challenges, [it] implicat[es] central First Amendment concerns," and therefore must be struck down. *See id.* at 547-48.

Likewise, the Supreme Court in *Rosenberger v. Rector & Visitors of the University of Virginia*, 515 U.S. 819 (1995), rejected another argument that Defendants advance here, namely that the State Review Process, as applied, is not viewpoint discriminatory because it "draw[s] lines based on content, not viewpoint." *Id*. at 830; Mot. 23-24. In *Rosenberger*, a university did not "exclude religion as a

subject matter, but [rather] select[ed] for disfavored treatment"—in the form of denial of funding—"those student journalistic efforts with religious editorial viewpoints." *Rosenberger*, 515 U.S. at 830-31. The Court held that this amounted to viewpoint discrimination. *Id.* at 831. So too here: The Board has not opted to exclude discussion of book objections, Statutory Objections, or disagreement with local districts from the State Review Process. Quite the contrary, the State Review Process is intended as a forum for parents to raise their disagreements. *See generally* § 1006.28(2)(a)6. But Plaintiffs and other parents who hold a particular viewpoint about those topics are selected for disfavored treatment: exclusion from the process altogether.

It is irrelevant whether Plaintiffs have *other* options—including "letter-writing campaigns, picket lines, op-eds," etc.—to express their disagreement with local school board decisions. *See* Mot. 17. Defendants do not point to any authority to explain how this avoids liability for viewpoint discrimination, instead implying that Plaintiffs should be satisfied with alternative options. That is not the law. By Defendants' logic, the *Rosenberger* Court should have excused the university's viewpoint discrimination against student organizations if those student organizations could identify a different funding source. Such a conclusion would gut the Court's First Amendment jurisprudence.

Simply put, viewpoint discrimination is unlawful. *Honeyfund*, 94 F.4th at 1278 ("[Viewpoint-based] restrictions are an egregious form of content discrimination and likely even invalid per se." (internal quotations and citation omitted)); *see also McMahon v. City of Panama City Beach,* 180 F. Supp. 3d 1076, 1109 (N.D. Fla. 2016) ("Viewpoint discrimination is 'an egregious form' of content discrimination that courts will not tolerate." (citing *Rosenberger*, 515 U.S. at 829)). This Court should decline Defendants' invitation to imagine contrary precedent that does not exist.

## II.    Plaintiffs Have Standing Because They Suffered a Concrete Injury That Is Redressable Through This Litigation.

"Here, at the motion-to-dismiss stage, a plaintiff must allege facts that, taken as true, 'plausibly' state that the elements of standing are met." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1241 (11th Cir. 2022) (citation omitted). Specifically, a plaintiff must allege facts sufficient to satisfy the three factors identified in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992): "First . . . injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. . . . Third, it must be likely . . . that the injury will be redressed by a favorable decision." 504 U.S. at 560-61 (internal quotations and citations omitted). Defendants argue that Plaintiffs' injury is not an injury-in-fact—alleging it is "procedural," not

concrete, and not particularized. Defendants further argue that there is no causal connection between the injury and Defendants;[5] and that a favorable decision will not redress the injury. Defendants are mistaken.

## A. Plaintiffs suffered an injury-in-fact when they were unconstitutionally denied access to the State Review Process on the basis of their viewpoint.

To establish standing, Plaintiffs must have suffered an injury that is "concrete and particularized." *Lujan*, 504 U.S. at 560 (1992). Courts "apply the injury-in-fact requirement most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced." *Harrell v. Fla. Bar*, 608 F.3d 1241, 1254 (11th Cir. 2010).

Plaintiffs are injured because they have been unconstitutionally "denie[d] access to the State Review Process on the basis of [their] viewpoint." Compl. ¶¶ 123, 129, 137. Each component part of this injury matters: the denial of the access, which is a suppression of Plaintiffs' expression; the characteristics of the State Review Process the Plaintiffs cannot access; *and* the fact that access is denied only because

---

[5] Defendants briefly argue that they have not caused Plaintiffs' injury, and their arguments are unavailing. Defendants argue that they are not responsible for book removals or restrictions, and that, therefore "[t]o the extent Plaintiffs' case depends on the questionable harm of removed material," Mot. 13, Defendants have not caused Plaintiffs' injury. But Plaintiffs' claims do not depend on that harm; Plaintiffs do not challenge book removals or restrictions. They are injured by, and challenge here, only their viewpoint-based exclusion from the State Review Process. That process was established by and is administered by Defendants, *see* Ch. 2023-105, § 6, Laws of Fla.; Rule 6A-1.094126, and Defendants' actions are directly responsible for Plaintiffs' injuries.

of Plaintiffs' viewpoint. Treating *this* injury, clearly identified in each count in the complaint, as Plaintiffs' injury, makes clear that Plaintiffs have standing.

### 1. Defendants inflicted a concrete injury on Plaintiffs by excluding them from a substantive public review process because of their viewpoint.

"[T]here is no doubt . . . that the [Plaintiff's] claimed injury is 'concrete and particularized' with the meaning of [*Lujan*] because they have alleged a deprivation of their First Amendment right to free speech." *Speech First v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022) (citing cases). As implemented, the State Review Process deprives Plaintiffs of their First Amendment free speech rights, *supra* Part I, and therefore inflicts an injury that is *per se* concrete and particularized.

This should end the inquiry. But further analysis of Plaintiffs' claims and Defendants' arguments only confirms that Plaintiffs have suffered a concrete injury by virtue of their viewpoint-based exclusion from the State Review Process.

Plaintiffs' interests are not, as Defendants claim, "procedural," and the authorities that Defendants rely on for that point are inapplicable. The rights characterized as procedural rights in those cases involved situations where the plaintiffs suffered no injury other than denial of that identified right. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 495-497 (2009) (treating as "procedural" a statutory right to comment on agency actions that would not impact plaintiffs, and acknowledging that "standing existed" to vindicate that right where agency action would impact a plaintiff); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)

(describing procedural rights as those where "a statute grants a person a statutory right"). The substantive rights of the *Summers* and *Spokeo* plaintiffs would have been implicated had the procedural violation been paired with an impact on a plaintiff; here, Plaintiffs' substantive First Amendment rights are violated, and they are impacted by their discriminatory exclusion from the State Review Process.

Plaintiffs' injury-in-fact, being denied the opportunity to express their disagreement through the State Review Process, happens to be related to accessing a process. That may make the injury "procedural" in common parlance, but not within the meaning of the law. Even if Defendants were correct that Plaintiffs' injuries were "procedural" within the meaning of their cited authorities, an individual "assuredly can" vindicate procedural rights "so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Lujan*, 504 U.S. at 573 n.8. That is plainly the case here.[6]

Defendants further assert that Plaintiffs' alleged injury is not cognizable because the relief available through the State Review Process does not explicitly include removal or retention of books. Mot. 9. Putting aside that Plaintiffs do not

---

[6] To the extent Defendants rely on their characterization of Plaintiffs' interest as "procedural" to mean that Plaintiffs' First Amendment rights are not implicated, this too misapprehends the meaning of "procedural" interest in the authorities upon which they rely.

here seek to remove or reinstate any books, *see* Compl. 35 (Prayer for Relief), Defendants' argument ignores that the State Review Process's functions include "remedying . . . procedural noncompliance." Mot. 9. Curing procedural noncompliance can be dispositive of the ultimate outcome of a dispute, for example, by remand to the original decision maker—here the local district—to review the objection again. Defendants' argument that injury cannot result because the process only reviews procedural compliance ignores this reality.[7]

Defendants also downplay the detailed and multifaceted nature of the State Review Process, which requires the Board to accept a special magistrate's findings of fact unless they are not supported by the evidence, mandates when the Board may disregard a special magistrate's conclusions of law, sets explicit timelines for various stages of the State Review Process, and requires a special magistrate to issue

---

[7] Defendants' argument also ignores that viewpoint-based exclusion from the process would be a concrete injury in and of itself, even if the process were as toothless as Defendants imply. In *Shurtleff v. City of Boston*, 596 U.S. 243 (2022), the Supreme Court held that a municipality's refusal to allow a Christian flag on a flagpole traditionally available to wide range of groups was First Amendment viewpoint discrimination. Although the Supreme Court is "obliged to examine standing *sua sponte* where standing has been erroneously assumed below," *Adarand Constructors, Inc. v. Mineta*, 534 U.S. 103, 110 (2001), not one of four separate opinions even raised the question whether the group had suffered a concrete injury— the mere fact that they were discriminatorily denied the opportunity to fly their flag was concrete injury enough for the Supreme Court. Even if the State Review Process were truly devoid of any conceivable consequence, which it is not, denying Plaintiffs the opportunity to express their disagreement because of their viewpoint would be no less concrete an injury than denying the *Shurtleff* plaintiffs the opportunity to fly a flag.

"recommendations for resolution of the dispute by the parties." Rule 6A-1.094126(9)(c). Being subjected to the State Review Process will undoubtedly impact local districts' treatment of all objections they consider—both on potential remand for re-review and reconsideration as a result of the State Review Process, and in considering challenges to other materials in the future. The potential time and financial consequences of being subjected to the process incentivize school districts to remove books in response to objections so as to avoid the State Review Process. These are tangible consequences that result from the Board's viewpoint discriminatory process.

But for the unconstitutional discrimination here, Plaintiffs would be able to express their disagreement with the procedures used by their local school boards in removing or restricting books, such as whether they allowed the requisite public comment and whether they provided proper weight to staff opinions. Denying parents access to a process that can provide such relief is a concrete injury.

**2.  As parents of students in public schools, Plaintiffs suffered a particularized injury when they were unconstitutionally denied the opportunity to seek review of decisions regarding materials in their children's schools.**

Because Plaintiffs have "alleged a deprivation of their First Amendment right to free speech," "there is no doubt" that the Plaintiffs have suffered particularized injury. *Cartwright*, 32 F.4th at 1119. "A particularized injury is one that 'affect[s] the plaintiff in a personal and individual way.'" *Baughcum v. Jackson*, 92 F.4th

1024, 1031 (11th Cir. 2024) (quoting *Spokeo*, 578 U.S. at 339). But that does not mean the plaintiff must be the only person to have suffered that injury, nor even that the injury must be confined to a small and discrete number of individuals. To the contrary, it is settled law that "[f]ederal courts enjoy the power to protect an interest that is 'shared by the many rather than the few.'" *Glynn Env't Coal. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1242 (11th Cir. 2022) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972)). "An injury can be 'widely shared' and remain actionable so long as 'the impact on the plaintiff is not plainly undifferentiated and common to *all* members of the public.'" *Glynn Env't Coal.*, 26 F.4th at 1242 (quoting *Spokeo*, 578 U.S. at 339 n.7; *Lujan*, 504 U.S. at 575) (cleaned up).

The only people who could conceivably suffer the same injury as Plaintiffs are other parents of students in school districts that have removed or restricted books in response to an objection. Even among that already limited group, only those parents who disagree with these decisions and wish to have those decisions reviewed through the State Review Process would be injured.

But even an injury to all parents of students in school districts that have taken a particular action is plainly particularized.[8] If, for instance, a school district imposed

---

[8] Defendants argue that the State Review Process is unavailable to all parents except one—the "original person who raised an objection," Mot. 10—and that the injury suffered by Plaintiffs therefore cannot be particularized. As a threshold matter, injury to every parent in a district save one can be particularized. Furthermore, Plaintiffs' viewpoint—their opposition to restriction and removal—precludes them,

a fee on every family with an enrolled child to purchase school supplies, it would strain credulity to argue that no parent had suffered adequately particularized injury to give rise to standing. And the injury here is more particularized than that: among parents, only those who oppose removal or restriction of books in their children's district—and wish to have those removals or restrictions reviewed—have suffered the same injury as Plaintiffs.

Defendants nevertheless argue that because "[m]any other parents might want to challenge the removal" of books, Mot. 10, Plaintiffs lack a particularized injury and are "merely concerned bystanders." *Id.* (internal quotations and citations omitted). But Plaintiffs are not bystanders: They have identified specific disagreements with their school board's actions on book removals or restrictions that they would have challenged through the State Review Process but for Defendants discriminating against their viewpoint, a concrete injury particular to them. More generally, parents excluded from the State Review Process because of their viewpoint on a decision to remove or restrict books in their children's schools are

---

by statute, from ever being the "original person who raised the objection," and thus precludes them from access to the process. Compl. ¶ 126 ("[O]nly a parent who objects to the *use* of particular material may file an 'objection,' while a parent who *supports* the use or opposes the removal or particular material cannot file an 'objection.'"); *see also* Compl. ¶¶ 26, 28, 41, 48, 55-56, 61, 120-121, 133-135. It is no answer to the Plaintiffs' claims that access to the State Review Process is limited to a single person, because state law prevents anyone from becoming that person unless they share the state's preferred view.

not bystanders, no matter how numerous they are. Plaintiffs do not dispute that many other parents in their district may share their viewpoint—like Plaintiffs, they too would be unconstitutionally excluded from the State Review Process because of their viewpoint, and those who would have sought review of their districts' decisions would have suffered the same particularized injury.

"The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable general grievance." *Spokeo*, 578 U.S. at 339 n.7. For example, in *Baughcum*, where Georgians aged 18 to 21 challenged a firearm restriction requiring adults under 21 to obtain a license not required of other adults, the Eleventh Circuit treated it as self-evident that they had suffered particularized injury even though all Georgians of their age were affected. *Baughcum*, 92 F.4th at 1031-1032 (holding that "plaintiffs satisfied the injury-in-fact requirement" with no discussion of particularized injury beyond a recitation of the relevant legal test). Plaintiffs here have suffered a similarly self-evident particularized injury: they have been prevented, personally and individually, from exercising a constitutional right because of a state law—as in *Baughcum*, similar injury to others does not obviate Plaintiffs' own injuries.[9]

---

[9] Defendants also argue that many parents could request access to the State Review Process, and that this broad availability would cause administrative and procedural difficulties. Maybe so, though speculative concerns about administrability do not justify the denial of Plaintiffs' constitutional rights.

These injuries stand in sharp contrast to the cases on which Defendants rely. In each of those cases, the plaintiffs lacked particularized injury because they simply sought "to require that the government be administered according to the law," *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1205-1206 (11th Cir. 1989)). In *Wood*, the Eleventh Circuit concluded that a voter challenging election results had suffered no particularized injury because his interest in having only lawful ballots counted was a generalized grievance. 981 F.3d at 1315. Similarly, in *Gardner v. Mutz*, the Eleventh Circuit determined that plaintiffs seeking to stop, on First Amendment grounds, the relocation of a war memorial they did not claim to have regularly visited, and would still be able to visit, had not "shown that they have suffered a particularized Article III injury of the sort that distinguishes them from other interested observers." 962 F.3d 1329, 1343 (11th Cir. 2020). The court distinguished the *Gardner* plaintiffs from people who regularly visited the monument and would not be able to do so after relocation—in other words, people who would, like Plaintiffs, be personally injured by the challenged action.

Defendants have not identified a single case where a court determined that plaintiffs lacked a particularized injury when, like Plaintiffs here, they alleged denial of the opportunity to exercise a constitutional right. Plaintiffs are not bystanders challenging the procedural components of the State Review Process or even

abstractly challenging its discriminatory structure—they are the specific subjects of the viewpoint discrimination inherent in the Board's implementation of the process who have suffered a cognizable injury.

## B. Closing the discriminatory forum—the relief Plaintiffs seek—would fully redress Plaintiffs' injury.

Finally, Defendants argue that Plaintiffs' claimed injury is not redressable because the requested relief would eliminate the State Review Process. Mot. 15. Defendants are correct that Plaintiffs request elimination of this discriminatory process, Compl. 35 (Prayer for Relief), but they are incorrect, and notably do not cite any analogous cases on the legal question of redressability. Eliminating the State Review Process is an adequate remedy for the injury Plaintiffs have suffered.

Viewpoint discrimination can be redressed either by elimination of the discrimination itself, thus permitting the previously disfavored speech, or by wholesale elimination of the forum in which the discrimination occurs. Considering hypothetical redress for alleged viewpoint discrimination resulting from the state making available "Choose Life" license plates with no equivalent for individuals who support abortion access, the Eleventh Circuit identified two options: it could "*either* . . . instruct the State to create a pro-choice license plate, *or* instruct the State to close the specialty license plate forum altogether." *Women's Emergency Network v. Bush*, 323 F.3d 937, 947 (11th Cir. 2003) (emphasis added). Either remedy,

standing alone, would have been adequate redress.[10] "When the constitutional violation is unequal treatment, as it is here, a court theoretically can cure that unequal treatment *either* by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 632 (2020) (emphasis added). This Court can redress Plaintiffs' injury by simply eliminating the discriminatory process: Plaintiffs would still be denied access to the process, but so would everyone else.[11]

III.  **Restricting Access Based on Viewpoint Is Unlawful in Limited Public Forums Such as the State Review Process, and Would Be Unlawful Even if the State Review Process Were a Nonpublic Forum.**

Defendants created a limited public forum by establishing the State Review Process. Even if the State Review Process were a nonpublic forum, however, Defendants' viewpoint discrimination would be unconstitutional. Defendants' arguments to the contrary rely on inapplicable analogies and precedent.

---

[10] The Eleventh Circuit ultimately concluded that the *Women's Emergency Network* plaintiffs lacked standing, both because the state had not *excluded* them from the license plate forum, and because any injury was not redressable since the plaintiffs sought only to eliminate pro-life license plates, as opposed to seeking pro-choice alternatives or total closure of the forum. Not so here, where Plaintiffs seek to close the discriminatory forum and specifically allege that they have been denied the opportunity to express their disagreement with school board decisions. *See* Compl. 35 (Prayer for Relief).

[11] Concerning Defendants' contention that it is beyond the scope of this Court to compel the creation of a fair State Review Process, *see* Mot. 15-16, Plaintiffs do not seek such relief. But Plaintiffs note that the Florida Legislature *could* instruct the State Board of Education to create a viewpoint-neutral process, or the State Board *could*, consistent with H.B. 1069, create such a process of its own volition.

## A. The State Review Process creates a limited public forum for protected expression.

"[T]he extent to which the Government can control access [to a public channel] depends on the nature of the relevant forum." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). Despite Defendants' argument that the State Review Process has not created any forum, Mot. 20-21, by offering a system for parents to express their disagreement with a local school board's decision, the Board "intentionally designated" the State Review Process "as a public forum," 473 U.S. at 800, because it "opened [it] for use by the public as a place for expressive activity." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983); *see also Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1348 (N.D. Ga. 2022) (describing a limited public forum as one "limited to use by certain groups or dedicated solely to the discussion of certain subjects" (internal quotations and citations omitted)).[12]

Even though the state "was not required to create the [State Review Process] in the first place," *Perry*, 460 U.S. at 45, once it did, "the Constitution constrains its power to regulate speech within the forum," including prohibiting discrimination

---

[12] There is some inconsistency in whether courts recognize limited public forums as a distinct category "or merely a variant of one of the other" categories, but that is irrelevant to the forum analysis in the Eleventh Circuit. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1237 n.5 (11th Cir. 2019).

against those who hold a disfavored viewpoint. *Gay Lesbian Bisexual All. v. Pryor*, 110 F.3d 1543, 1548 (11th Cir. 1997); *see also Rosenberger*, 515 U.S. at 829 ("Once it has opened a limited forum, . . . [t]he State may not exclude speech where its distinction is not 'reasonable in light of the purpose served by the forum,' nor may it discriminate against speech on the basis of its viewpoint." (citation omitted)). It is commonplace in review of administrative agency processes that an agency may have wide latitude in the ultimate policy choice but may not employ unfair or unconstitutional procedures regarding that choice. Moreover, by arguing that the State Review Process should be viewed as an "administrative appeal," Mot. 20, Defendants overlook that administrative appeals processes ordinarily allow any initial losing party—here parents who disagree with local district removal decisions—an equal right to appeal an unfavorable ruling, regardless of their viewpoint.

At its root, Defendants' argument that the State Review Process is not a forum for speech rests on Defendants' unsupported contention that because other processes—like reporting power outages—that allow for citizen complaints do not necessarily create forums, the State Review Process must not create a forum either. Defendants' inapt examples and accompanying argument are not supported by any legal precedent. Nor are any of the allegedly analogous complaint processes, Mot. 21, actually analogous at all. Plaintiffs here seek to disagree with actions of their

local school boards through a process that the State created for just that purpose, *see, e.g.*, Compl. ¶ 67. They do not—as Defendants suggest—seek to compliment any action. That distinction makes all the difference. If provided access to the State Review Process, Plaintiffs stand to directly benefit, and be substantively impacted, by having their disagreement with their local school boards' actions reviewed, adjudicated, and potentially subjected to remand through a formal process about a prior government decision. *See supra* Part 2(a). Not so in Defendants' examples, which are all akin to a free-floating complaint box: a person complimenting a licensee, reporting sanitary conditions, or even noting adherence to the law will not be directly or substantively impacted by doing so. Not accepting unprompted reports that customers' electricity is still on has no consequence, but denying parents access to the State Review Process both discriminates against them based on their viewpoint and deprives them of the opportunity to obtain potentially impactful review of school district decisions. The individuals in Defendants' examples would be merely providing information to a government entity without seeking any consequence, whereas Plaintiffs are seeking particular action.

An appropriate analogy would be a process for reviewing local zoning decisions. An entity creating such a process could not say that it would review complaints regarding zoning decisions but then only accept complaints that property should be preserved as park space to address environmental concerns, while turning

away complaints that property should be designated for business purposes to grow the economy. Or creating a process for citizens to lodge complaints and request review of school budgets but then only accepting complaints that schools are underfunded while turning away complaints that schools are overfunded. The government could not create such a system without violating the First Amendment's bar on viewpoint discrimination any more than the Board could create such a system here.

Defendants' argument that the State Review Process does not create a forum relies on inapplicable precedent and a mischaracterization of the nature of Plaintiffs' challenge. Neither can carry the day. Defendants' attempt, once again, to frame this case as a challenge to book removals, *see* Mot. 20, has no basis in fact, as Plaintiffs' claims do not challenge book removals, nor do they challenge any government curation of school libraries. *See supra* Part I(A). And *Walker v. Texas Division, Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 214-19 (2015), which Defendants suggest supports their contention, in fact demonstrates precisely *why* a forum exists here. While the Court found no forum in *Walker*, where private parties submitted designs for specialty license plates, the crux of the Court's holding was that the expression at issue belonged to Texas, *not* the private parties. Not so here, where Plaintiffs seek to express disagreement with and obtain review of a local district decision and the Board is imposing "restrictions on purely private speech that occurs

[through a] government [process]," in which case a forum analysis is appropriate. *Id.* at 215 (citing *Cornelius*, 473 U.S. at 800). The only message that the Board conveys by restricting access to the State Review Process is which viewpoints are disfavored.[13]

## B. Viewpoint discrimination is unlawful in a limited public forum such as the State Review Process.

Viewpoint-based discrimination is unlawful regardless of whether the restriction on speech is in a public forum, a designated public forum, limited public forum, or a nonpublic forum. *See, e.g.*, *Searcey v. Harris*, 888 F.2d 1314, 1324 (11th Cir. 1989) ("[V]iewpoint discrimination [] is prohibited by the First Amendment regardless of the type of forum."); *see also Rosenberger*, 515 U.S. at 829 (noting that the First Amendment "forbid[s] the State to exercise viewpoint discrimination, even when the limited public forum is one of its own creation"); *Perry*, 460 U.S. at 46 (noting that while a state "may reserve [a] forum for its intended purposes," it may not do so in "an effort to suppress expression merely because public officials oppose the speaker's view"). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker

---

[13] Defendants' only argument regarding government expression concerns whether curation of libraries is government speech. But that argument is outside the scope of this case. *See supra* n.3.

is the rationale for the restriction." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 421 (E.D. Pa. 2021) (citation omitted).

Defendants are correct that when crafting the State Review Process, the Legislature "did not designate a forum for debate over what school libraries should have on their shelves." Mot. 22. What the Legislature did create, however, is a forum for parents to express their "disagree[ment] with the determination made by the[ir] district school board on [a particular] objection to the use of a specific material." § 1006.28(2)(a)6. Yet by Defendants' own admission, it affords that opportunity only to parents who object to the use of certain material, while excluding parents who disagree with district determinations to remove or restrict materials.

Even if the Court accepts Defendants' argument that the State Review Process is a nonpublic forum, the Board still cannot exclude Plaintiffs, or other parents who favor book retention, because doing so amounts to "an effort to suppress expression merely because [the state] opposes the [parents'] view." *Perry*, 460 U.S. at 46. The differences between a nonpublic and a limited public forum lie in their intended openness to the public, but both may be limited in purpose and neither allows viewpoint-based discrimination. *See Perry*, 460 U.S. at 45-46 n.7; *see also Cambridge Christian*, 942 F.3d at 1237 ("A 'limited public forum' . . . exists where a government has 'reserv[ed a forum] for certain groups or for the discussion of certain topics.'" (citation omitted)); *id.* (noting that a nonpublic forum is a

government "space that 'is not by tradition or designation a forum for public communication[,]'. . . where the state is acting only as 'a proprietor, managing its internal operations'" (citation omitted)).

While the Board could impose certain restrictions in the context of a nonpublic forum, any such restrictions would have to be reasonably related to the purpose of the State Review Process "and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 46; *see also Cornelius*, 473 U.S. at 811 ("The existence of reasonably grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a façade for viewpoint-based discrimination."). There is no reasonable argument that excluding those who favor retaining books is reasonably related to the stated goal of the State Review Process: to "determine facts relating to the school district's determination, consider information provided by the parent and the school district, and render a recommended decision." § 1006.28(2)(a)6.

Even if the Board can limit the bases of complaints that can be lodged through the State Review Process, it does not pass constitutional muster to prohibit access to the system based on the speaker's viewpoint concerning those bases. It may be acceptable to limit access to the system to complaints alleging that a local school board failed to follow its own procedures in adjudicating a book objection. But even such a system must be equally accessible to those whose complaints concern

decisions to *remove* a book as it is to those whose complaints concern decisions *not* to remove a book. The State Review Process fails that test. The Board's failure to provide equal access to the State Review Process is simply unconstitutional, regardless of what type of forum the Court finds it to be.

## <u>Conclusion</u>

For the aforementioned reasons, Defendants' motion should be denied.

Dated: July 19, 2024

Samantha J. Past
(Florida Bar No. 1054519)
Daniel B. Tilley
(Florida Bar No. 102882)
American Civil Liberties Union
Foundation of Florida
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2714
spast@aclufl.org
dtilley@aclufl.org

Sam Boyd
(Florida Bar No. 1012141)
Southern Poverty Law Center
2 Biscayne Blvd., Suite 3750
Miami, FL 33131
(305) 537-0574
Sam.Boyd@splcenter.org

Respectfully submitted,

By: */s/ Brooke Menschel*
Brooke Menschel*
(D.C. Bar No. 900389)
Mark B. Samburg*
(D.C. Bar No. 1018533)
Robin F. Thurston*
(D.C. Bar No. 151399)
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
bmenschel@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org

*Admitted *pro hac vice*

*Counsel for the Plaintiffs*

## Certificate of Compliance

I certify that the foregoing, other than those portions excluded by Local Rule 7.1(F), contains 7,987 words.

/s/ Brooke Menschel
Brooke Menschel