IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**NANCY TRAY, et al.,**

    **Plaintiffs,**

v.                                                Case No. 4:24-cv-238-AW-MAF

**FLORIDA STATE BOARD OF
EDUCATION, et al.,**

    **Defendants.**

_____/

## **ORDER GRANTING MOTION TO DISMISS**

Not all Floridians agree about what books should be in school libraries. Nor do they agree about how education officials should go about deciding what books belong there. The issue in this case is whether a state-mandated process for reviewing district decisions is constitutional.

Under a relatively new Florida law, each school district must have a process through which a parent or county resident can object to the district's use of specific library books or other educational materials. Fla. Stat. § 1006.28(2)(a)2. A parent can object to a library book's availability on multiple bases, including that the book is pornographic; that it "[d]epicts or describes sexual conduct" (with some exceptions); or that it "[i]s inappropriate for the grade level and age group for which the material is used." *Id.* If a book falls into one of these categories, the district must discontinue its use. *Id.*

1

To ensure local school boards' compliance, the Florida Legislature included what the parties call the "State Review Process." If a parent requests a book's removal and the local school board refuses, that parent may seek further review. *Id.* § 1006.28(2)(a)6. More specifically, that parent may seek appointment of a special magistrate to review the local school board's handling of the matter. *Id.* The special magistrate must "determine facts relating to the school district's determination" and "render a recommended decision for resolution to the State Board of Education." *Id.* The State Board of Education must then approve or reject that recommendation. *Id.*

This State Review Process serves to review only local school board decisions rejecting removal requests. If the board grants a removal request at the outset, there is no review to be had. In Plaintiffs' view, this asymmetry constitutes viewpoint discrimination and violates the First Amendment.

Plaintiffs are parents of public-school students in St. Johns and Orange Counties. They disagree with their districts' decisions to remove certain library books.[1] *See* ECF No. 1 (Compl.) ¶¶ 9-13. The school boards removed the books after other parents objected to them. *Id.* ¶¶ 71-115. Plaintiffs wanted to challenge the local decisions, but they could not rely on the State Review Process because it applies

---

[1] I use "remove" as shorthand. Plaintiffs allege that some books were removed, *see* Compl. ¶ 75, while others remain available but age-restricted or requiring parental consent, *id.* ¶¶ 103, 110.

2

only to removal denials. *Id.* ¶¶ 84-85. So Plaintiffs brought this § 1983 action, seeking injunctive and declaratory relief.

Defendants are the Florida State Board of Education, several of its members, and the Florida Commissioner of Education. They moved to dismiss, arguing Plaintiffs lack standing and, alternatively, that their claims fail on the merits. ECF No. 11 (MTD).[2] Having carefully considered the parties' arguments, I conclude Plaintiffs have alleged enough to show standing but that they have not alleged any plausible First Amendment claim. This order thus grants the motion to dismiss.

## I.

Because standing is "an essential and unchanging part of the case-or-controversy requirement," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), I will start there. *See Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) ("[A] court must satisfy itself that the plaintiff has standing before proceeding to consider the merits of her claim, no matter how weighty or interesting."). Standing requires "(1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson v.*

---

[2] Defendants also argue in a footnote that the complaint is a shotgun pleading. MTD at 3 n.1. But I will not consider an independent argument raised only in a footnote. Regardless, I cannot conclude that the complaint makes it "virtually impossible to know which allegations of fact are intended to support which claims," *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1325 (11th Cir. 2015) (cleaned up), so I would not dismiss it as a shotgun pleading anyway.

*Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (citing *Lujan*, 504 U.S. at 560-61). At the motion-to-dismiss stage, Plaintiffs need only allege facts plausibly supporting standing. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1241 (11th Cir. 2022). Their obligation to prove standing comes later.

Plaintiffs have alleged enough. First, they have sufficiently alleged an injury. A sufficient injury is one that is (1) concrete and particularized and (2) actual or imminent. *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1113 (11th Cir. 2021) (citing *Lujan*, 504 U.S. at 560). Because Plaintiffs seek prospective relief, they must allege imminent future injury. *ACLU of Florida, Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1194 (11th Cir. 2009). But "immediacy requires only that the anticipated injury occur within some fixed period of time in the future, not that it happen in the colloquial sense of soon." *Id.* (cleaned up) (quoting *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1159 (11th Cir. 2008)).

Plaintiffs' asserted injury is that they have been "denied access to the State Review Process" based on their viewpoint. Compl. ¶ 7. They have alleged both past attempts to access the State Review Process to express objections to specific book removals, *id.* ¶¶ 77-95, and intent to access the process in the future regarding those specific books, if permitted, *id.* ¶¶ 103-05, 110-15. While "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be" are insufficient, *Lujan*, 504 U.S. at 564, Plaintiffs allege more

4

here. For example, Plaintiff Tray alleges that if there were equal access to all objectors, she would "file multiple requests for access to the State Review Process because she disagrees with" her district's decision to remove certain books. Compl. ¶ 105; *see also id.* ¶¶ 103-04. A reasonable inference from this is that Tray faces imminent injury. Plaintiffs thus have plausibly alleged a sufficient injury for standing.[3]

Defendants' contrary arguments are unpersuasive. First, Defendants note that "a bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement. MTD at 8 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). But Plaintiffs' alleged injuries are not "merely procedural." Plaintiffs allege an inability to speak in the State Review Process from which they are excluded. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022) (noting that injury was concrete and particularized when plaintiffs had "alleged a deprivation of their First Amendment right to free speech"). That the injury arises from Defendants' denying Plaintiffs' access to the review process does not mean there is only procedural injury. Plaintiffs want to speak in the State Review Process, and their inability to do that constitutes a sufficient injury.

---

[3] There are similar allegations regarding other Plaintiffs. But because Plaintiffs seek only prospective relief, they need only show standing as to one of them. *See Bowsher v. Synar*, 478 U.S. 714, 721 (1986).

Second, Defendants argue Plaintiffs' injuries are not particularized because almost everyone is excluded from the process. An injury is particularized when it affects the plaintiff "in a personal and individual way." *Sierra*, 996 F.3d at 1113 (quoting *Lujan*, 504 U.S. at 560 n.1). Plaintiffs have alleged facts showing they are parents of public-school students, that they disagree with their districts' removal of several specific books, and that they have attempted to (or would attempt to) object to those removals—and future removals—through the State Review Process if not denied access. Regardless of how many others share their grievances, these grievances are not general. *See Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1242 (11th Cir. 2022). Nor are Plaintiffs mere bystanders. They wish to access (and have already attempted to access) the State Review Process to challenge the removal of specific books. *Cf. Gardner v. Mutz*, 962 F.3d 1329, 1342 (11th Cir. 2020) (differentiating between concerned bystanders and those directly affected by government action).

Third, Defendants argue that the book removals constitute government speech, meaning the First Amendment is not implicated. MTD at 12. But this mixes standing with the merits. In analyzing standing, we must assume the claim has merit. *See Moody v. Holeman*, 887 F.3d 1281, 1285 (11th Cir. 2018) ("[F]ederal courts 'must not confuse weakness on the merits with absence of Article III standing.'" (quoting *Ariz. St. Leg. v. Ariz. Indep. Redist. Comm'n*, 576 U.S. 787, 800 (2015));

6

*Swann v. Sec'y, Ga.*, 668 F.3d 1285, 1288 (11th Cir. 2012) ("[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." (quotation omitted)). Regardless, Plaintiffs are not challenging the removals themselves. They are challenging their own exclusion from the State Review Process, which they contend was based on their viewpoint. Plaintiffs have alleged a sufficient injury.

Defendants next challenge traceability, contending that "[t]o the extent Plaintiffs' case depends on the questionable harm of removed material, that injury is caused by district school boards that are not before this Court." MTD at 13. But as just noted, Plaintiffs' claim does not depend on book removals. Plaintiffs have alleged (and Defendants seem to agree) that the State Board of Education and Commissioner of Education are responsible for implementing the State Review Process. *See* Compl. ¶¶ 14, 18, 30-32, 50-61; *see also* MTD at 13-14. And Plaintiffs allege Defendants are enforcing the process to exclude them from using it to express their viewpoints. This is enough for traceability.

That leaves redressability, which "often travel[s] together" with traceability. *See Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021). For this element, Plaintiffs must plausibly allege that an order enjoining Defendants from enforcing the State Review Process (the relief they seek) is likely to redress their injury. *See id.* They have alleged enough for this element too.

Plaintiffs' alleged injury is their exclusion from the State Review Process. The harm they seek to remedy is the alleged viewpoint discrimination. Their requested relief—"[c]losing the discriminatory forum," *see* ECF No. 14 (Resp.) at 24—would not grant them access to the process, but it would end the alleged viewpoint discrimination. It would thus redress the alleged injury. *See Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 632 (2020) (plurality opinion) (explaining that "the First Amendment is a kind of Equal Protection Clause for ideas" and that "when the constitutional violation is unequal treatment . . ., a court theoretically can cure that unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all" (cleaned up)); *see also Heckler v. Mathews*, 465 U.S. 728, 740 (1984) ("When the right invoked is that of equal treatment, the appropriate remedy is a mandate of *equal* treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." (cleaned up)); *Women's Emergency Network v. Bush*, 323 F.3d 937, 947 (11th Cir. 2003) (explaining that "[t]o remedy Appellant's alleged injury, we would need either to instruct the State to create a pro-choice license plate, or instruct the State to close the specialty license plate forum altogether" but concluding there was no redressability after noting "[a]ppellants have not challenged the entire forum" and that "[t]heir challenge was to the Choose Life statute, not the specialty license plate program" (citation omitted)).

Satisfied that the court has jurisdiction, I can now turn to the merits.

## II.

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Well-pleaded facts are accepted as true but "[t]hreadbare recitals of the elements" of a claim and "mere conclusory statements" are not. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this stage, I draw all reasonable inferences in Plaintiffs' favor. *See MacPhee v. MiMedx Grp.*, 73 F.4th 1220, 1228 (11th Cir. 2023).

Plaintiffs pleaded three separate counts, but each alleges the same theory: that the State Review Process excludes Plaintiffs based on their viewpoint. Compl. ¶ 119 (alleging in Count One that "[a]s applied, H.B. 1069 makes the State Review Process available only to parents who seek to express their disagreement with and challenge a local school board decision to *retain* (*i.e.*, not to remove) specific material, but does not make that same process available to parents who seek to express their disagreement with and challenge a local school board decision to *remove* specific material"); *id.* ¶ 126 (alleging in Count Two that "[u]nder the State Review Process Rule, only a parent who objects to the use of particular material may file an 'objection,' while a parent who supports the use or opposes the removal of particular material cannot file an 'objection'"); *id.* ¶ 137 (alleging in Count Three that "[t]he State Review Process Rule . . . is not viewpoint neutral, and thus violates the First

Amendment . . . because it provides or denies access to the State Review Process on the basis of a parent's viewpoint—specifically, by making access to the State Review Process dependent on whether the parent's viewpoint is (1) to disagree with a local school board's decision to remove particular material, or (2) to disagree with a local school board's decision not to remove particular material").

All three counts fail for the same reason. The State Review Process is available only to parents who had their own objection denied, making any exclusion based on a speaker's status, not his viewpoint. Plaintiffs have not plausibly alleged any of them was denied access to the State Review Process "solely to suppress the point of view he espouses on an otherwise includible subject." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799 (1985).

As noted above, Defendants argue (albeit in connection with standing) that Plaintiffs' speech is not even at issue—that this is a government-speech case. "When the government exercises the right to speak for itself, it can freely select the views that it wants to express." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1230 (11th Cir. 2019). In Defendants' view, "the government speaks through its selection of which books to put on the shelves and which books to exclude." MTD at 12 (quoting *PETA, Inc. v. Gittens*, 414 F.3d 23, 28 (D.C. Cir. 2005)). But as already explained, Plaintiffs challenge their inability to

10

access the State Review Process to offer their own speech; they do not challenge any book-removal decisions in this litigation.

Defendants separately argue that—government speech aside—the State Review Process is not a forum for speech. MTD at 20-21. They offer fair comparisons to adjudicatory processes: "A licensing agency might accept complaints about a licensee for further investigation, without also providing a forum for citizens to compliment the licensee." *Id.* at 21. And it is true that an administrative process like the State Review Process does not fit neatly into any established forum analysis. *Cf. Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991) ("It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." (citing *Sacher v. United States*, 343 U.S. 1, 8 (1952) & *Fisher v. Pace*, 336 U.S. 155 (1949)); *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) ("It is not surprising that courts have thus far been reluctant to allow the First Amendment to intrude into the courtroom. At first blush, the courtroom seems like the quintessential arena for public debate, but upon closer analysis, it is clear this is not, and never has been, an arena for free debate.").

It is true that in some instances, forum analysis may be incompatible with a challenged program. *See, e.g.*, *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 205 (2003). And it admittedly seems an imperfect fit here. Nonetheless, Defendants

11

cite no authority conclusively showing that ordinary forum analysis is inappropriate here. And any speech restriction in a government-owned space is generally subject to forum analysis. *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1316 (11th Cir. 2024). I will thus apply that analysis, under which I conclude Plaintiffs have not stated a claim.

Courts have long recognized "the commonsense point that the Constitution does not require the government to 'grant access to all who wish to exercise their right to free speech,' no matter the setting, 'without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.'" *McDonough v. Garcia*, 116 F.4th 1319, 1322 (11th Cir. 2024) (en banc) (quoting *Cornelius*, 473 U.S. at 799-800). "Disallowing any limits whatsoever in all government spaces would often lead to chaos, and could even keep the government from fulfilling its lawful functions." *Id.* Nonetheless, the First Amendment "demands a close look when the government restricts speech." *Id.* Courts rely on forum analysis to perform this close look.

The extent to which the government may restrict speech in government spaces depends on the type of forum at issue. *See Cornelius*, 473 U.S. at 800. The Supreme Court has identified four types: (1) traditional public forums, (2) designated public forums, (3) limited public forums, and (4) nonpublic forums. *McDonough*, 116 F.4th at 1323-24.

12

A traditional public forum is one that historically has been "devoted to assembly and debate." *Perry*, 460 U.S. at 45. A designated public forum is a public space not traditionally used for assembly and debate but that the government designates for those purposes. *Id.* at 45-46. Neither side argues that this case involves a traditional or designated public forum. *See* MTD at 20-22; Resp. at 25. Instead, Plaintiffs argue the State Review Process is a limited public forum, Resp. at 25—a forum "created 'for certain groups or for the discussion of certain topics,'" *McDonough*, 116 F.4th at 1324 (quoting *Rosenberger*, 515 U.S. at 829). Defendants, on the other hand, argue the State Review Process is, at best, a nonpublic forum, MTD at 20-22, which is "government property that 'is not by tradition or designation a forum for public communication.'" *McDonough*, 116 F.4th at 1323 (quoting *Perry*, 460 U.S. at 46). Defendants likely have the better of this argument. *Cf. Cornelius*, 473 U.S. at 805 (explaining the fact "[t]hat [expressive activity] occurs in the context of the forum created does not imply that the forum thereby becomes a public forum for First Amendment purposes"); *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 12 (2018) (finding government-controlled property set aside for a specific purpose was nonpublic forum). But ultimately, it makes no difference. *Cf. Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1346 (11th Cir. 2024) ("Though the analysis would not change one way or another, we'll assume, without deciding, that the HART vehicles and property at issue here are nonpublic forums

as opposed to limited public forums."), *cert. denied sub nom. Young Israel of Tampa, Inc. v. Hillsborough Reg'l Transit*, No. 23-1276 (U.S. Oct. 7, 2024).

Regardless of whether the State Review Process is a limited public forum or a nonpublic forum, the parties agree the appropriate test would be whether the distinctions it draws (1) are reasonable in light of its purpose, and (2) are viewpoint neutral. *Compare* MTD at 22 (citing *Int'l Soc. For Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992)) *with* Resp. at 27 (citing *Rosenberger*, 515 U.S. at 829); *see also McDonough*, 116 F.4th at 1324, 1327-28. Because Plaintiffs have not alleged facts plausibly showing the State Review Process is neither reasonable nor viewpoint neutral, Plaintiffs have not stated a claim.

To argue the distinctions the State Review Process draws are unreasonable in light of its purpose, Plaintiffs misstate that purpose. They say the forum's purpose is to allow parents to voice disagreement "with actions of their local school boards." Resp. at 27. But there is no indication this is so. The State Review Process's purpose is evident from the statute's text: it is to afford a mechanism for the State to promote local boards' compliance with state law. *See* Fla. Stat. § 1006.28(2)(a)6. The statute requires local school boards to remove any materials that are pornographic, depict or describe sexual conduct, are inappropriate based on age or grade level, or are otherwise prohibited by law. Fla. Stat. § 1006.28(2)(a)2. The process is limited to determining whether the school board complied with these requirements.

In other words, the State Review Process exists to uphold Florida law, under which local districts may not retain books of the sort the Legislature deemed inappropriate. Although it is unlawful for local districts to retain prohibited books, it is not unlawful for them to exclude books that are *not* prohibited. Thus, it makes sense that the State Review Process does not offer parents wanting books retained an opportunity to appeal or otherwise access the process. The bottom line is that limiting access to parents who appeal inclusion of a book is reasonable in light of the State Review Process's purpose of ensuring local compliance with Florida law.

Next, distinctions the State Review Process draws are viewpoint neutral. Courts treat speech restrictions differently depending on whether they are content based or viewpoint based. "A restriction on speech is content based if the 'law applies to particular speech because of the topic discussed or the idea or message expressed.'" *Vidal v. Elster*, 602 U.S. 286, 294 (2024) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Viewpoint discrimination, on the other hand, regulates speech based on "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger*, 515 U.S. at 829. In a nonpublic or limited public forum, content discrimination is permissible, but viewpoint discrimination—an "egregious form" of content discrimination, *id.*—is not. *See Minnesota Voters All. v. Mansky*, 585 U.S. 1, 12 (2018) (nonpublic forum); *Rosenberger*, 515 U.S. at 829-30 (limited public forum).

15

Plaintiffs argue that access to the State Review Process depends on viewpoint. They point out that the State Review Process is not "equally accessible to those whose complaints concern decisions to *remove* a book as it is to those whose complaints concern decisions *not* to remove a book." Resp. at 32-33. But showing a discrepancy in access is not enough—Plaintiffs must show that the policy limiting access is "intended to discourage one viewpoint and advance another." *Perry*, 460 U.S. at 49. Here, Plaintiffs have not. They have not alleged facts plausibly showing that the limited access was based on anything more than Plaintiffs' status. *Cf. id.* ("[I]t is more accurate to characterize the access policy as based on the *status* of the respective unions rather than their views.").

In many ways, Plaintiffs' challenge is like the one the Supreme Court rejected in *Perry*. In that case, a school policy allowed the teachers union to use the school mail system, a nonpublic forum, but did not allow similar access to other unions. *Id.* A union denied access claimed viewpoint discrimination. The Court rejected the argument, concluding "[t]he differential access" was "wholly consistent with the district's legitimate interest in preserving the property for the use to which it is lawfully dedicated." *Id.* at 49 (cleaned up).[4] The competing unions' differences in

---

[4] The fact that the space at issue is not a physical location does not change the First Amendment analysis. *See Cornelius*, 473 U.S. at 801 ("[*Perry*] examined the access sought by the speaker and defined the forum as a school's internal mail system

status were enough to justify the difference in treatment. *Id.* at 55 ("[N]ot all speech is equally situated, and the state may draw distinctions which relate to the special purpose for which the property is used . . . . [F]or a school mail facility, the difference in status between the exclusive bargaining representative and its rival is such a distinction.").

Like with the policy in *Perry*, differences in access to the State Review Process are based on status, not viewpoint. The State Review Process serves to ensure that the local districts comply with state law. Accordingly, it serves only parents with a particular status: those whose formal objections at the local level were rejected. Access does not depend on the ideology of the individual seeking appointment of a special master. What matters is status alone. Everyone is excluded from the process except the parent who made an unsuccessful objection below—regardless of that parent's motivating ideology.

Plaintiffs have not stated a First Amendment claim, and their complaint must be dismissed.

## CONCLUSION

Defendants' motion to dismiss (ECF No. 11) is GRANTED, and Plaintiffs' complaint (ECF No. 1) is DISMISSED with leave to amend. Although it is unlikely

---

and the teachers' mailboxes, notwithstanding that an 'internal mail system' lacks a physical situs.").

any amendment will cure the defects, Plaintiffs may file an amended complaint within 14 days. If they do, Defendants will have 14 days thereafter to respond. If Plaintiffs do not file an amended complaint, final judgment will issue based on this order.

    SO ORDERED on January 27, 2025.

                                      s/ *Allen Winsor*
                                      United States District Judge